**Bobby H. BURNS, Appellant,**

v.

**MILLER, HIERSCHE, MARTENS & HAYWARD, P.C. and Milo H. Segner, Jr., Receiver, Appellees.**

**No. 05–94–01288–CV.**

Court of Appeals of Texas, Dallas.

May 27, 1997.

---

Robert D. Lybrand, Lybrand & Schutza, P.C., Dallas, for Appellant.

D. Ronald Reneker, Bush Craddock & Reneker, L.L.P., Dallas, for Appellees.

Before KINKEADE, WRIGHT and BRIDGES, JJ.

## OPINION

KINKEADE, Justice.

Bobby H. Burns appeals a trial court order compelling him to turn over various property interests to a receiver, Milo H. Segner, who would apply the property to a judgment debt Burns owes the law firm of Miller, Hiersche, Martens & Hayward, P.C. Because the trial court's order (1) compelled Burns to turn over exempt spendthrift trust property, (2) compelled Burns to turn over proceeds or disbursements of exempt spendthrift trust property, (3) compelled Burns to turn over property held by third parties without evidence that such property was subject to Burns's possession or control, and (4) was not clear and concise and reached unidentified property without a showing of any present or future right of Burns to such property, we reverse the trial court's order and remand this case.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1991, the trial court entered a judgment against Bobby H. Burns and in favor of Sherwood E. Blount, Jr. in the amount of $296,484.56. Blount, in turn, owed money to the law firm of Miller, Hiersche, Martens & Hayward, P.C. ("Miller Hiersche" or "the firm"). Miller Hiersche obtained a security interest in certain assets of Blount, including his judgment against Burns. In April 1993, Miller Hiersche foreclosed on that security interest and purchased Blount's judgment against Burns at a foreclosure sale. Miller Hiersche received no payments on the Burns judgment and applied to the trial court to order Burns to turn over various property interests to satisfy the judgment. On July 18, 1994, the trial court granted Miller Hiersche's application and signed a turnover order.

Burns appeals only the provisions of the turnover order that:

(1) compelled him to turn over four specified categories of property, including disbursements from spendthrift trusts;

(2) appointed a receiver to receive and distribute the property subject to the turnover order;

(3) compelled Burns to write letters to the trustees of the two trusts instructing them to make all future trust distributions to the receiver; and

(4) awarded Miller Hiersche attorneys' fees of $1000.

The trusts pertinent to this appeal are two trusts created in the wills of Burns's parents. Burns is the sole beneficiary of the trusts, from which the trustees are authorized to make discretionary disbursements for Burns's support and maintenance. Both trusts contain spendthrift clauses providing that Burns's rights to income or principal from the trusts shall not be liable for any of his debts or subject to any type of alienation.

## TURNOVER STATUTE

In eleven points of error, Burns contends the turnover order violates section 31.002 of the Texas Civil Practice and Remedies Code, known as the turnover statute. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986 & Supp.1997). The turnover statute is a purely procedural device by which creditors may reach nonexempt assets of debtors that are otherwise difficult to attach or levy on by ordinary legal process. TEX.CIV.PRAC. & REM. CODE ANN. § 31.002(a) (Vernon 1986); *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 224 (Tex.1991). Under the statute, a judgment creditor can apply to a court for an injunction or other means to satisfy a judgment debt through a judgment debtor's property, including present or future property rights. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 1986). The court may order the judgment debtor to turn over property in the debtor's possession or control to a sheriff and may also appoint a receiver to take possession of the property. *Id.* § 31.002(b).

## SPENDTHRIFT TRUSTS

■ A spendthrift provision in a trust generally prohibits a beneficiary from anticipating or assigning his interests in the trust. *Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock,* 876 S.W.2d 377, 380 (Tex.App.—Austin 1994, no writ). Spendthrift trusts protect the beneficiary's interest in the trust corpus and income from claims of a beneficiary's creditors while the corpus and income remain in the trust and are held by the trustee. *Id.* Texas courts have long upheld and enforced spendthrift provisions, justifying this restraint on alienation not out of consideration for the beneficiary, but rath-

er for the right of the donor creating the trust to control his gift. *See Caples v. Buell,* 243 S.W. 1066, 1067 (Tex.Com.App.1922); *Hines v. Sands,* 312 S.W.2d 275, 279 (Tex. Civ.App.—Fort Worth 1958, no writ). The trust code also specifically protects the right of a trust settlor to include a spendthrift provision that prohibits the income and/or principal interest of a beneficiary from being transferred before payment or delivery of the interest to the beneficiary. TEX.TRUST CODE ANN. § 112.035 (Vernon 1995). (We note that a beneficiary's interest in a spendthrift trust may be reached for child support obligations. *See* TEX.FAM.CODE ANN. § 154.005 (Vernon 1996).)

## THE TURNOVER ORDER

The trial court's order compelled Burns to turn over several categories of property. Burns challenges four of those categories in this appeal. We interpret Burns's brief to include a challenge of all four categories under each of the first five points of error. We review the law relating to the first five points of error and then address those points of error together for each of the four categories of property that Burns challenges.

### Exempt Property

■ We review turnover orders under an abuse of discretion standard. *Beaumont Bank,* 806 S.W.2d at 226. In his first point of error, Burns argues the trial court abused its discretion by ordering the turnover of exempt property, that is, trust fund assets in the hands of the trustees before they are distributed to Burns or for the benefit of Burns. The turnover statute provides that a trial court cannot order the turnover of property that is "exempt" from attachment, execution, or seizure. TEX.CIV.PRAC. & REM. CODE ANN. § 31.002(a)(2) (Vernon 1986).

■ Miller Hiersche acknowledges that section 112.035 of the trust code protects assets in spendthrift trusts. *See* TEX.TRUST CODE ANN. § 112.035(a) (Vernon 1995). However, the firm contends that section 112.035 does not make spendthrift trust assets "exempt" as that term is used in the turnover statute. It argues that property is considered exempt under the turnover stat-

ute only if the legislature described the property using the words "exempt from attachment, execution, or garnishment" in a relevant statute. We disagree. The trust code does not use the language Miller Hiersche contends is necessary to create an exemption. However, the turnover statute does not require that "exempt" property must be described in a statute using such language. The effect of the spendthrift trust statute is that spendthrift trusts are exempt from attachment, execution, garnishment, or other seizure. In this respect, the statute merely codified existing case law. *See, e.g., First Bank & Trust v. Goss,* 533 S.W.2d 93, 94–96 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ) (spendthrift trust assets exempt from garnishment).

■ At oral argument, Miller Hiersche also argued that the spendthrift trust assets at issue in this case cannot be considered exempt property of Burns in terms of the turnover statute because they are not property belonging to Burns at all, but rather to the trustees of the trusts. While this is a novel argument, it has no merit. The trustee of a trust holds bare legal title and the right to possession of trust assets, while the beneficiary is considered the real owner of the property, holding equitable or beneficial title. *Hallmark v. Port/Cooper–T. Smith Stevedoring Co.,* 907 S.W.2d 586, 589 (Tex.App.—Corpus Christi 1995, no writ); *Dierschke,* 876 S.W.2d at 381. Furthermore, unless trust beneficiaries had an ownership interest in trust assets, spendthrift provisions disabling them from alienating that interest would be superfluous. We conclude that Burns has an ownership interest in the spendthrift trust assets at issue and that those assets are exempt property in terms of the turnover statute.

■ Burns contends that the turnover order, in effect, reached property while it was in the hands of the trustees because it compelled the trustees to make direct payments to the receiver by ordering Burns to write letters to the trustees requesting them to make distributions directly to the receiver. Although the turnover order compelled Burns to write letters to the trustees requesting them to pay future distributions to

the receiver, the order did not purport to compel the trustees to make distributions to the receiver. In fact, we note that in a related case, the Fort Worth Court of Appeals has issued an unpublished opinion in which it concluded the trustees are not bound to follow Burns's request. *See Miller, Hiersche, Martens & Hayward, P.C. v. Armstrong et al.,* No. 2–95–161–CV (Tex. App.— Fort Worth, August 6, 1996, writ denied) (not designated for publication). We conclude the trial court did not order the turnover of exempt property by ordering Burns to send letters to the trustees requesting that they make future distributions to the receiver.

Burns also contends the trial court's order compelled him directly to turn over trust assets before they have been distributed. We examine this argument below for each of the challenged categories of property.

### Proceeds or Disbursements of Exempt Property

■ Once a trustee pays or delivers trust assets out of a spendthrift trust, they are no longer exempt under the spendthrift trust statute. Tex.Trust Code Ann. § 112.035(a) (Vernon 1995). Thus, they are no longer considered exempt property under section 31.002(a)(2) of the turnover statute. In his second point of error, Burns argues that such distributions are, nevertheless, not subject to turnover because, although they are not exempt property, they are "proceeds" or a "disbursement" of exempt property, which are not subject to turnover pursuant to section 31.002(f) of the turnover statute. *See* Tex.Civ.Prac. & Rem.Code Ann. § 31.002(f) (Vernon Supp.1997). Section 31.002(f) provides, in pertinent part, that a court may not enter or enforce an order that requires the turnover of "the proceeds of, or the disbursement of, property exempt under any statute...." *Id.* The legislature amended the turnover statute by adding section (f) partially in response to a line of cases that allowed the turnover of property that had lost its exempt status because a debtor had received it. *See* House Research Organization, Bill Analysis, Tex. H.B. 1029, 71st Leg., R.S. (1989); Debate on Tex. H.B. 1029 on the Floor of the House of Representatives, 71st

Leg., R.S. (April 12, 1989) (tape available from Director of Communications for the House of Representatives). To better understand the meaning of the amendment to the turnover statute, we examine the cases that it overruled.

Texas courts have struggled with the issue of what types of property are subject to turnover. *Ex parte Prado,* 911 S.W.2d 849, 850 (Tex.App.—Austin 1995, orig. proceeding). For example, courts cannot order the turnover of "current wages," which are exempt from seizure under the property code. *See* TEX.PROP.CODE ANN. § 42.001(b)(1) (Vernon Supp.1997) (current wages exempt except to enforce child support). Courts had, however, ordered the turnover of paychecks on the theory that they were no longer exempt as "current wages" once they had been paid to, and received by, an employee who was a judgment debtor. *See, e.g., Schmerbeck v. River Oaks Bank,* 786 S.W.2d 521, 522 (Tex.App.—Texarkana 1990, no writ). Similarly, courts had ordered the turnover of retirement paychecks on the theory that retirement benefits were no longer exempt once they had been paid to, and received by, a judgment debtor. *See, e.g., Cain v. Cain,* 746 S.W.2d 861, 864 (Tex.App.—El Paso 1988, writ denied).

In 1989, the legislature overruled this line of cases by amending the turnover statute to provide that a court may not enter or enforce an order that requires a judgment debtor to turn over the proceeds of, or disbursements of, property that is exempt under any statute (except to enforce child support obligations). *See* TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1997). This amendment was intended, in part, to prevent turnovers of paychecks, retirement checks, and other similar types of assets after a judgment debtor received them. HOUSE COMM. ON THE JUDICIARY, BILL ANALYSIS, Tex. H.B. 1029, 71st Leg., R.S. (1989). Thus, even when property is no longer exempt under any other statute, if it represents proceeds or disbursements of exempt property, it is not subject to a turnover order. *See Caulley v. Caulley,* 806 S.W.2d 795, 798 (Tex. 1991); *Bergman v. Bergman,* 888 S.W.2d 580, 586 (Tex.App.—El Paso 1994, no writ).

The issue before us is whether section 31.002(f) prohibits the turnover of proceeds or disbursements from spendthrift trusts. Spendthrift trusts are not specifically mentioned in the legislative history, and there is no indication the legislature considered the section's application to such trusts. Moreover, the historical basis for protecting spendthrift trusts differs from that for protecting current wages and other similar types of property that the legislature specifically considered in amending the turnover statute. For example, the current wage exemption is designed to protect a wage earner's ability to meet current living expenses. *Barlow v. Lane,* 745 S.W.2d 451, 454 (Tex.App.—Waco 1988, writ denied). Subjecting wages to turnover once they are received by a wage earner thwarts the purpose of the exemption. The protection afforded spendthrift trust assets, however, has historically been a limited concession to the right of a trust settlor to control his property by making it inalienable while it remains in the trust. *See Caples,* 243 S.W. at 1067; *Hines,* 312 S.W.2d at 279. Indeed, by its terms, the trust code protects spendthrift trust assets only before they are distributed from the trust. TEX.TRUST CODE ANN. § 112.035 (Vernon 1995). Allowing the turnover of spendthrift trust distributions would not thwart the trust code or the historical purpose of protecting spendthrift trusts. Nevertheless, the plain language of section 31.002(f) provides that the proceeds or disbursements of property exempt under "any statute" are not subject to a turnover order. Therefore, because spendthrift trust assets are exempt under the trust code, we are constrained to conclude that proceeds and disbursements from such trusts are not subject to turnover orders. *See* TEX.TRUST CODE ANN. § 112.035 (Vernon 1995); TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp. 1997). We examine the application of this rule below for each of the challenged categories of property subject to the turnover order.

### Property Held by Third Parties

In his third and fourth points of error, Burns argues the trial court abused its discretion in ordering him to turn over prop-

erty that third parties possess. A trial court may order a judgment debtor to turn over nonexempt property that a third party holds if the trial court makes a factual finding that the property is subject to the possession or control of the judgment debtor. *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276–77 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex.App.—San Antonio 1985, no writ). For example, a trial court may order a judgment debtor to turn over shares of stock that are subject to his possession and control because he owns them, even if they are in the hands of a third party. *Norsul*, 703 S.W.2d at 349.

■ The trial court made a factual finding that the property listed in the turnover order was in, or may come into, Burns's possession or control. Although Burns's brief is not entirely clear, we construe his argument under his third and fourth points of error as a contention that there was no evidence to support the trial court's finding that the property was subject to Burns's possession or control. Under an abuse of discretion standard, which we apply in reviewing a turnover order, legal and factual insufficiency are not independent grounds of error, but are factors in determining whether the trial court abused its discretion. *DeVore v. Central Bank & Trust*, 908 S.W.2d 605, 608 (Tex.App.—Fort Worth 1995, no writ). A trial court has abused its discretion if there is no evidence of a substantive and probative character that supports the trial court's decision. *See id.* We examine Burns's third and fourth points of error below for each category of challenged property.

### Existing Property and Present or Future Rights

■ In his fifth point of error, Burns argues the trial court abused its discretion by ordering him to turn over property that did not exist or in which he did not have present or future rights. A trial court abuses its discretion if it signs a turnover order that does not identify specific nonexempt property subject to the order. *See Ex parte Prado*, 911 S.W.2d at 850. The turnover statute requires a factual showing that specific prop-

erty is nonexempt and not readily subject to ordinary execution. *Bergman v. Bergman*, 828 S.W.2d 555, 557 (Tex.App.—El Paso 1992, no writ). Moreover, in identifying the property subject to turnover, the trial court's order must be definite, clear, and concise, leaving the debtor no doubt about his duty and not calling for interpretations, inferences, or conclusions. *See id.* The turnover statute applies, by its terms, to present or future rights to property. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 1986).

■ We note that the appellate courts appear split on the issue of which party has the burden to prove that property is nonexempt or exempt. *Compare, e.g., Roosth v. Roosth*, 889 S.W.2d 445, 459 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (party asserting exemption has burden to prove exemption) *with Sloan v. Douglass*, 713 S.W.2d 436, 441 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) (creditor must establish property is nonexempt, and if debtor raises defense of exemption, creditor has burden to overcome defense). We agree with the Fourteenth District Houston Court of Appeals that, although the turnover statute does not indicate clearly who has the burden of proving an exemption, the better interpretation is to place the burden of proving an exemption on the debtor. *Roosth*, 889 S.W.2d at 459 n. 4.

■ Burns contends the turnover order reaches property that does not exist, is not identified, or in which he has no present or future rights or interests. He contends that because the trusts at issue are discretionary and he has no right to compel distributions from them, he has no right or interest in any future trust distributions. As we have previously concluded, Burns has a beneficial ownership interest in the trusts, including an interest in future discretionary distributions. Although he does not have a right to compel distributions, he does have a future beneficial right and interest in any distributions that will be made from the trusts. We conclude that trust distributions, including future distributions, are clearly and concisely identified property in which Burns has present or future beneficial rights.

This fifth point of error overlaps with the third and fourth points of error to the extent that Burns does not have present or future rights to property that is held by third parties and is not subject to his possession or control. We address such overlapping issues under the third and fourth points of error and not the fifth point of error. We examine Burns's fifth point of error below for each category of challenged property.

### The Challenged Categories of Property

 The first category of challenged property subject to the turnover order includes money or property representing distributions, including future distributions, made to Burns, or to someone else for his benefit, from the two spendthrift trusts. This category of property does not reach trust assets while they are held by the trustees and are exempt property. Nor does this category include unidentified property in which Burns has no present or future rights. It does, however, reach direct distributions from the trusts, which are tantamount to proceeds or disbursements of the trust assets and are not subject to turnover. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 31.002(f) (Vernon Supp.1997). Furthermore, to the extent property in this category includes property held by third parties, our review of the record reveals no evidence of substantive or probative character that such property is subject to Burns's possession or control. We note that the trusts permit the trustees to distribute assets only to Burns or to others for his benefit. That fact, however, is not evidence that any distributions made to third parties for Burns's benefit are subject to his possession or control or that he has the power to take possession of such property or control what a third party does with the property.

Regarding the first category of property Burns challenges, we (1) overrule Burns's first point of error because the category does not include exempt property, (2) sustain Burns's second point of error because the trial court abused its discretion in ordering him to turn over proceeds or disbursements of exempt property, (3) sustain Burns's third and fourth points of error because the trial court abused its discretion in ordering the turnover of property in the hands of third parties, and (4) overrule Burns's fifth point of error because the category does not include any unidentified, nonexisting property or property in which Burns has no present or future rights.

The second category of challenged property includes the proceeds of the sale of any property that has been distributed to Burns, or to someone else for his benefit, from the trusts since November 12, 1991 and that may be distributed in the future. Like the first category of property, this category does not reach property while it remains in the hands of the trustees and is exempt. Unlike the first category, however, it does not relate to the actual distributions from the trusts, but rather to the proceeds of the sale of such distributions.

The issue of how far "proceeds" would extend was raised during public hearings on the amendment to the turnover statute before the Senate Committee on Jurisprudence. *See Hearings on Tex. H.B. 1029 Before the Senate Comm. on Jurisprudence*, 71st Leg., R.S. (May 2, 1989) (Statement of A. Overstreet, drafter of bill) (tape available from Senate Staff Services Office). In the context of receiving a paycheck, the amendment's drafter said that "proceeds" was intended to include the cash someone received from cashing a paycheck, but that such money would cease being proceeds once it was spent. *Id.* He also said that "proceeds" included what someone receives when he negotiates an instrument. *Id.* The turnover order at issue in this case reaches "the proceeds of the sale of any property which has been distributed" or will be distributed from the trusts in the future. This category could reach various types of property, including, for example, certificates of stock. The legislative history indicates that if someone receives an instrument that was exempt before it was received and then negotiates that instrument, the resulting funds would still be proceeds of exempt property under the turnover statute. Thus, if the trustees distributed stock to Burns from the trusts and he sold it, the resulting funds (or "proceeds of the sale" of the stock using the terms of the turnover

order) would be proceeds of exempt property and not subject to turnover. Because the second category of property (the proceeds of the sale of distributed trust assets) includes property under such circumstances, we conclude it reaches the proceeds of exempt property in violation of section 31.002(f).

This second category of property also includes the proceeds of the sale of property that was distributed to third parties for Burns's benefit. Our review of the record reveals no evidence of a substantive and probative character that such property is subject to Burns's possession or control. This category does not include unidentified, nonexisting property or property in which Burns has no present or future rights.

Regarding the second category of property Burns challenges, we (1) overrule Burns's first point of error because the category does not include exempt property, (2) sustain Burns's second point of error because the trial court abused its discretion in ordering the turnover of proceeds or disbursements of exempt property, (3) sustain Burns's third and fourth points of error because the trial court abused its discretion in ordering the turnover of property in the hands of third parties, and (4) overrule Burn's fifth point of error because the category does not include unidentified, nonexisting property or property in which Burns has no present or future rights.

The third challenged category of property subject to the turnover order includes any cash in any bank, securities, or other accounts in anyone's name that contain funds from, or as a result of, distributions from the trusts, including future distributions. Again, this category does not reach trust assets while they remain in the hands of the trustees and are exempt. It does, however, reach distributions from the trusts which are not subject to turnover because they are proceeds or disbursements of exempt property (for example, direct deposits from the trusts into such an account). This category also reaches property in the hands of third parties. However, the record contains no evidence of a substantive and probative character that such property in the hands of third parties is subject to Burns's possession or

control. This category does not reach unidentified, nonexisting property or property in which Burns has no present or future rights.

Regarding the third category of property Burns challenges, we (1) overrule Burns's first point of error because the category does not include exempt property, (2) sustain Burns's second point of error because the trial court abused its discretion to the extent it ordered the turnover of proceeds or disbursements of exempt property, (3) sustain Burns's third and fourth points of error because the trial court abused its discretion to the extent it ordered the turnover of property in the hands of third parties, and (4) overrule Burn's fifth point of error because the category does not include unidentified, nonexisting property or property in which Burns had no present or future rights.

■ Finally, the fourth challenged category of property subject to the turnover order includes cash, money orders, checks (other than paychecks), drafts, coins, or monies in any form and in anyone's possession which Burns beneficially owns or may own in the future. Although this category does not reference the trusts, the category, by its terms, encompasses property from any source, including the trusts. As previously noted, the beneficiary of a trust is the beneficial owner of the trust assets. *See Hallmark*, 907 S.W.2d at 589; *Dierschke*, 876 S.W.2d at 381. Therefore, this category reaches spendthrift trust property that is in the hands of the trustees, but which Burns beneficially owns. Spendthrift trust assets while in the hands of the trustees, before being distributed, are exempt from attachment, execution, garnishment, or seizure, and therefore, are not subject to turnover. *See* Tex.Trust Code Ann. § 112.035 (Vernon 1995); Tex.Civ.Prac. & Rem.Code Ann. § 31.002(a)(2) (Vernon 1986).

The wording of this category is broad enough to reach distributions from the trusts, which are not subject to turnover because they are proceeds or disbursements of exempt property. This category also reaches property held by third parties, and again, our review of the record indicates no evidence of a substantive and probative char-

acter that such property is subject to Burns's possession or control.

■ The fourth category is worded so broadly as to encompass any property Burns may ever own now or in the future, including currently nonexistent property, without identifying the source of that property and regardless of its exempt status. Moreover, the turnover order is not clear and concise in identifying nonexempt property included in this category. *See Bergman*, 828 S.W.2d at 557.

Regarding the fourth category of property Burns challenges, we (1) sustain Burns's first point of error because the trial court abused its discretion to the extent the category reaches exempt property, (2) sustain Burns's second point of error because the trial court abused its discretion to the extent it ordered the turnover of proceeds or disbursements of exempt property, (3) sustain Burns's third and fourth points of error because the trial court abused its discretion to the extent it ordered the turnover of property in the hands of third parties, and (4) sustain Burns's fifth point of error because the trial court abused its discretion to the extent its order was not clear and concise and reached unidentified property without a showing of any present or future right of Burns to that property.

Because of our disposition of Burns's first five points of error, we do not address: (1) his seventh point of error, in which he contends the trial court abused its discretion by appointing a receiver to take possession of exempt property; (2) his eighth point of error, in which he contends the trial court abused its discretion in ordering the turnover of property that could readily be attached or levied on by ordinary legal process; or (3) his tenth point of error, in which he challenges several of the trial court's findings of fact.

## APPOINTMENT OF RECEIVER

■ In his sixth point of error, Burns contends the trial court erred in ordering the turnover of property to someone other than a sheriff or constable. The turnover statute provides that a trial court may order a judg-ment debtor to turn over property to a sheriff or constable or may appoint a receiver to take possession of the property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(b)(1),(3) (Vernon 1986); *Ex parte Prado*, 911 S.W.2d. at 850. Therefore, the trial court was authorized to appoint a receiver to take possession of the subject property. We overrule Burns's sixth point of error because the trial court did not err in ordering the turnover of property to someone other than a sheriff or constable.

## ATTORNEYS' FEES

In his ninth point of error, Burns argues the trial court abused its discretion in awarding $1000 in attorneys' fees to Miller Hiersche in the absence of any evidence as to the amount of attorneys' fees. He argues in the alternative that the award of attorneys' fees should be set aside if he prevails in this appeal.

■ The turnover statute provides that a judgment creditor is entitled to recover reasonable attorneys' fees. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(e) (Vernon 1986). Attorneys' fees under the turnover statute are governed by Texas Civil Practice and Remedies Code sections 38.001, 38.003, and 38.004. TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001, 38.003, 38.004 (Vernon 1986); *see Thomas v. Thomas*, 917 S.W.2d 425, 437 (Tex.App.—Waco 1996, no writ). The amount a party recovers is one factor considered in measuring attorneys' fees. *See Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 607 (Tex.App.—Dallas 1990, no writ). Other factors include the total amount of money involved in the case, the nature of the case, the time spent, and the skill and experience required. *Id.* We note that Burns does not challenge certain items of property that the trial court ordered him to turn over, and therefore, portions of the turnover order are unaffected by this appeal. However, because of our disposition of Burns's first five points of error, the turnover order is so significantly altered as to merit the trial court's reconsideration of reasonable attorneys' fees. Because we have concluded the

trial court improperly ordered Burns to turn over the four categories of property subject to this appeal, to the extent the trial court awarded attorneys' fees considering those four categories of property, we conclude the trial court abused its discretion in awarding attorneys' fees. We sustain Burns's ninth point of error.

### LETTERS TO TRUSTEES

In his eleventh point of error, Burns contends the trial court abused its discretion in ordering him to send letters instructing the trustees to make future trust distributions directly to the receiver appointed in the turnover order. Burns argues the turnover statute does not authorize a trial court to compel a debtor to execute documents, only to turn over property and documents. Burns further argues the trial court was without authority to direct Burns to compel the trustees to make payments to the receiver.

■ Although the turnover statute does not specifically provide that a trial court can compel a judgment debtor to execute documents, the statute does not limit the trial court's powers to ordering the turnover of property and documents. Rather, the statute provides that a judgment creditor is entitled to aid from a court through injunction "or other means" to reach the debtor's property. TEX.CIV.PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 1986). We conclude a trial court has authority to compel a debtor to execute documents that will aid in collecting a judgment debt. As we have previously discussed, however, the letters Burns wrote are not binding on the trustees, and Burns could not compel the trustees to make distributions to the receiver. (The record indicates, however, the trustees have complied with a previous request of Burns regarding the manner and recipient of trust distributions.) Because the trial court had authority to compel Burns to execute documents, whether Burns's instructions were binding or not, we overrule Burns's eleventh point of error.

Because we conclude the trial court abused its discretion in entering the turnover order, we reverse the judgment of the trial court to the extent it ordered (1) the payment of $1000 in attorneys' fees and (2) the turnover of the four categories of property pertinent to this appeal. We remand this cause to the trial court for further proceedings consistent with this opinion.