Reversed and Rendered and Opinion filed August 30, 2005









Reversed and Rendered and Opinion
filed August 30, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00510-CV

_______________

 

HERBERT AND AMY GOEBEL, AS NEXT FRIENDS AND PARENTS OF
KATIE GOEBEL AND BRENT GOEBEL, MINORS, Appellants

 

V.

 

WILLIAM BRANDLEY, Appellee

______________________________________________________________________

 

On Appeal from the 215th District Court 

Harris County, Texas

Trial Court Cause No. 03-49054 

______________________________________________________________________

 

O P I N I O N

 








Appellants,
Herbert and Amy Goebel, as next friends and parents of Katie and Brent Goebel
(collectively AGoebels@), appeal a summary judgment in favor
of appellee William Brandley, claiming the trial court erred in concluding Amy
Goebel=s purchase of United States Savings
Bonds Series EE (Asavings bonds@) in her children=s names, through payroll deductions,
was a fraudulent transfer under Texas Uniform Fraudulent Transfer Act (ATUFTA@).[1]
  Because the parties do not dispute that
Amy purchased the savings bonds with her wages, but Brandley failed to
establish the wages were Aassets@ as defined under TUFTA, we reverse the judgment of the trial
court and render judgment in favor of the Goebels.  

I.  Facts and
Procedural Background

The
parties stipulated to the following facts. 
In January 1996, Amy entered into a voluntary payroll deduction program
offered by her employer UTMB-Galveston, in which she purchased a $200 savings
bond each month for her minor son, Brent. 
The following year, in April 1997, Amy began purchasing savings bonds
through the program in the same amount for her minor daughter, Katie.  At the time of their purchase, the savings
bonds were issued in the children=s names.  Amy continued purchasing a $200 bond each
month for each child through these payroll deductions until August 2003.

In
March 2001, Brandley was awarded a judgment against Herbert and Amy for
$37,433.52 in connection with a property dispute.[2]  In August 2003, Brandley filed suit against
Herbert and Amy, as next friends and parents of Katie and Brent, under TUFTA,
claiming the savings bonds were fraudulently transferred to the children.








Brandley
filed a summary judgment motion, asserting that (1) Amy fraudulently
transferred the savings bonds after his claim arose, (2) she did not receive a
reasonably equivalent value in exchange for the transfer of those assets, and
(3) Amy was insolvent at the time of the transfer.  The Goebels also filed a summary judgment
motion claiming that there was no transfer of assets as a matter of law because
Amy purchased the savings bonds with her Acurrent wages@ which, as exempt property, are not
subject to TUFTA=s provisions.  In his
response to the their motion, Brandley incorporated the stipulation of facts
executed by the parties.  In addition to
the facts set forth above, the stipulation included, in pertinent part, the
following:

$                  
At all times, Amy
Goebel has maintained control over her participation in this voluntary payroll
deduction program.

 

$                  
At any time, Amy
Goebel could have discontinued the payroll deduction used to purchase the
savings bonds in question.

 

$                  
Amy Goebel
voluntarily used her wages to purchase savings bonds for Brent and Katie
Goebel.

 

$                  
As their parent
and legal guardian, Amy Goebel has always controlled Katie and Brent Goebel=s assets, including the U.S. savings bonds.

 

$                  
Katie and Brent
Goebel paid no value for the savings bonds.

 

$                  
Amy
and Herbert Goebel have been insolvent at all times since Brandley=s March 6, 2001 judgment against
them.

The trial court entered a final judgment, granting summary
judgment to Brandley, denying the Goebels= motion, and ordering that Brandley
recover $6,000 from Katie and $6,000 from Brent.[3]   

II.  Discussion








In their first appellate issue, the Goebels contend the trial
court erred in granting Brandley=s summary judgment motion because Amy
purchased the savings bonds with her wages, prior to receipt of those wages,
and she began participating in the payroll deduction program several years
before Brandley=s judgment.  They also
argue that Amy never owned the savings bonds because all were purchased in the
name of her children.  Consequently,
according to the Goebels, there was no transfer of Aassets@ as defined under TUFTA and,
therefore, they argue in their second issue that Katie and Brent cannot be
liable to Brandley for damages under that statute. 

Brandley argues that Amy=s participation in the payroll deduction
program was entirely voluntary; therefore, because she controlled the funds
used to purchase the savings bonds, those wages were not exempt as Acurrent wages.@ 

A.        Standard of
Review

Under the summary judgment standard of review, a movant has
the burden to show at the trial level that there are no genuine issues of
material fact, and he is entitled to judgment as a matter of law.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  In determining whether there is a genuine
fact issue precluding summary judgment, evidence favorable to the non‑movant
is taken as true and we make all reasonable inferences in his favor.  Id. 
We review a trial court=s summary judgment de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
A movant is entitled to summary judgment only if he conclusively proves
all essential elements of his claim.  Johnston
v. Crook, 93 S.W.3d 263, 273 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied) (citing MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986)).

When cross-motions for summary
judgment are filed, a reviewing court examines all of the summary judgment
evidence presented by both sides, determines all questions presented and, if
reversing, renders such judgment as the trial court should have rendered.  Bradley v. State ex rel. White, 990
S.W.2d 245, 247 (Tex. 1999); Vill. of Pheasant Run Homeowners Ass=n v.
Kastor, 47 S.W.3d 747, 750 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  Each party must carry its own summary
judgment burden and neither can prevail due to the other=s failure to meet that burden.  W.H.V., Inc. v. Assocs. Hous. Fin., LLC,
43 S.W.3d 83, 87 (Tex. App.CDallas 2001, pet. denied).








B.        Fraudulent
Transfers 

TUFTA provides remedies to creditors of debtors who
fraudulently transfer assets under certain circumstances, as set out in the
statute.  See Tex. Bus. & Com. Code Ann. '' 24.005B.006, 24.008 (Vernon 2002); see
also Kaufman v. Morales, 93 S.W.3d 650, 653 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (AThe purpose of the [T]UFTA is to >prevent fraudulent transfers of
property by a debtor who intends to defraud creditors by placing assets beyond
their reach.=@). 
Although there are different methods of establishing a claim under
TUFTA, in this case Brandley acknowledges he is not asserting any claims or
allegations of fraud or fraudulent intent against the Goebels.  He moved for summary judgment based only on
section 24.006(a) of the statute, which provides:

A transfer made or obligation incurred by a debtor is
fraudulent as to a creditor whose claim arose before the transfer was made or
the obligation was incurred if the debtor made the transfer or incurred the
obligation without receiving a reasonably equivalent value in exchange for the
transfer or obligation and the debtor was insolvent at that time or the debtor
became insolvent as a result of the transfer or obligation.

Tex. Bus. & Com. Code Ann. ' 24.006(a).  ATransfer@ is defined as every manner of Adisposing of or parting with an asset
or an interest in an asset,@ including the payment of money.  See id. ' 24.002(12).  

1.         Asset

Under TUFTA, Aasset@ is defined as Aproperty of a debtor,@ but does not include, as it relates
to this case, property to the extent it is generally exempt under
non-bankruptcy law.  See id. ' 24.002(2).  Section 42.001 of the Property Code expressly
provides that Acurrent wages@ are exempt from garnishment,
attachment, or execution.  See Tex. Prop. Code Ann. ' 42.001(a), (b)(1) (Vernon 2000). 








In his
summary judgment motion, Brandley stated A[i]t is undisputed that [Amy]
transferred $200 per month in savings bonds to both Katie and Brent
every month from the date of Brandley=s judgment until August, 2003.@ 
(Emphasis added).  In support of
his motion, Brandley attached copies of interrogatories completed by Katie and
Brent indicating Amy had purchased the savings bonds for the children through
the payroll deduction program.[4]  In response to Brandley=s summary judgment motion, and in
their own subsequent motion, the Goebels argued that the property Amy
transferred was her Acurrent wages,@ which is exempt property falling
outside the purview of TUFTA=s provisions.[5]








Brandley
argued in his reply that the savings bonds were not exempt, asserting it was an
Airrefutable fact@ Amy fraudulently transferred assets.[6]  He claimed that, because Amy had the ability
to stop the payroll deductions, her wages became nonexempt property.  Brandley further argued that wages, once
received by the wage-earner, are no longer considered exempt property and when
Amy purchased the savings bonds, her wages lost their status as Acurrent wages.@

a.         current wages

Under
this State=s constitution, current wages are
exempt from garnishment.  Tex. Const. Art. XVI, ' 28. 
Current wages are also exempt from attachment, execution or other seizure
under the Property Code.  See Tex. Prop. Code Ann. ' 42.001(b)(1).  Generally, a conveyance of exempt property
may not be attacked as a fraud on creditors. 
Duran v. Henderson, 71 S.W.3d 833, 842B43 (Tex. App.CTexarkana 2002, pet. denied).  The rationale underlying this rule is that
the law already has removed exempt property from the reach of creditors and
conveyance of the property, whether fraudulent or not, does not deprive a
creditor of his rights in the property.  Id.
at 843.  Under TUFTA, if the property
transferred is exempt, a defrauded creditor is not afforded any relief.  See Tex.
Bus. & Com. Code Ann. '' 24.002(2), 24.002(12); Duran,
71 S.W.3d at 843.    








In this
case, the stipulated facts and the case law establish that the property
transferred was Amy=s Acurrent wages@ and was, therefore, exempt property under TUFTA.  The parties agreed that Amy purchased the
savings bonds with her Awages@ through the payroll-deduction program.  There is no dispute that all the
savings bonds were purchased through the program, nor any dispute that Amy
never directly received the subject wages.[7]  Further, the savings bonds were purchased in
the children=s names.   Thus, under these circumstances, the assets
transferred were Amy=s Acurrent wages@ and, to the extent those wages failed to qualify as Acurrent wages@ as a matter of law, Brandley had the
burden to prove that issue as the movant on that ground.[8]  

In
support of his argument that Amy=s wages lost their status as exempt
property, Brandley relies primarily on cases decided before 1989.  Prior to that time, in determining whether
wages were subject to the turnover statute,[9]
some Texas courts concluded that once the wages had been paid and received by
the debtor, they were no longer Acurrent@ wages.  See Burns v. Miller, Hiersche, Martens
& Hayward, P.C., 948 S.W.2d 317, 323 (Tex. App.CDallas 1997, writ denied).  In 1989, however, the legislature overruled
that line of cases by amending the turnover statute to exclude current wages
from its scope, except in cases involving court‑ordered child
support.  See Caulley v. Caulley,
806 S.W.2d 795, 797B98 (Tex. 1991); Burns, 948 S.W.2d at 323.  Following the 1989 amendment, a court can no
longer enter or enforce an order that requires the turnover of the proceeds of,
or the disbursement of, property exempt under any statute.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 31.002(f) (Vernon 1997); Burns,
948 S.W.2d at 323.








Brandley
attached copies of two cases to his motion, both unpublished, which stand for
the proposition that wages deposited in a bank account lose their status as Acurrent wages.@[10] 
Brandley also cited to a published case, Massachusetts Mutual Life
Insurance v. Shoemaker, 849 F. Supp. 30, 33 (S.D. Tex. 1994), in which the
court noted that under Texas law, A[w]ages cease to be >current= for purposes of the exemption laws
when they >are paid to and received by
the wage earner.=@ 
(Emphasis added).  And, in his
appellate brief, Brandley included a cite to Liebman v. Grand, 981
S.W.2d 426, 435 (Tex. App.CEl Paso 1998, no pet.), in which the appellate court, after
acknowledging the 1989 amendment to the turnover statute and its purpose to
protect wages received by the debtor, distinguished the situation present in
that case as follows:

[A]n
entirely different situation is presented where a judgment debtor . . .
voluntarily liquidates exempt personal property, such as an automobile, and
holds the funds for several months before investing them in an exempt
annuity.  A finding that the funds
realized from the sale of the vehicle are not exempt, particularly where the
judgment debtor has purchased a replacement vehicle, does not defeat the
purpose of the exemption provided by Section 42.002(9).  To hold otherwise would permit Leibman to
claim an exemption not only for his two automobiles but also for the funds realized
from the sale of a third vehicle.  This
we decline to do.








Id. at 435. Based on these authorities,
Brandley asks us to construe Amy=s ability to stop the payroll
deductions as her Areceipt@ of the wages.[11]  Thus, Brandley=s argument is in fact a Aconstructive receipt@ argument.  Brandley, however, does not cite to any
authority supporting his Aconstructive receipt@ theory.  And, as indicated by the quotation from Leibman,
the cases Brandley relies on do not support his position under the facts of
this case.             Brandley also
likens the purchase of the savings bonds to depositing a paycheck into a bank
account and, quoting from an unpublished case, states A[f]unds in a bank account, even when
their stated use is to pay the mortgage on the homestead, are not exempt.@[12] 
Whether this is a correct statement of the law is not the issue before
us, however, because there is no dispute in this case that Amy did not receive
the subject wages and, certainly, no dispute that Amy had not deposited those
wages into her bank account.      

Finally,
notwithstanding the fact the cases relied on by Brandley are not binding
precedent for this court, those cases also involve more obvious or egregious
circumstances of purposeful avoidance of creditors than are present here.  In this case, it is undisputed that Amy began
the payroll deductions years before Brandley received his judgment against the
Goebels.  It is also undisputed that the
savings bonds were issued in the children=s names, and Amy never actually received
the wages.  Because the purpose of TUFTA
is to prevent fraudulent transfers of property by a debtor who intends to
defraud creditors by placing assets beyond their reach, concluding that Amy=s wages are no longer exempt under
these circumstances would not further this statutory purpose.  See Tel. Equip. Network, Inc. v.
TA/Westchase Place, Ltd., 80 S.W.3d 601, 607 (Tex. App.CHouston [1st Dist.] 2002, no pet.). 








In sum,
Brandley has failed to establish that Amy=s wages lost their exempt character
for purposes of TUFTA merely because she had the ability to end the payroll
deduction program.  We cannot conclude,
as Brandley advocates, that Amy=s voluntary participationBBbeginning several years prior to
Brandley=s judgmentBBin a payroll deduction program to
purchase savings bonds in her children=s names, with wages she did not
receive, qualifies as a transfer of assets under TUFTA.  We sustain the Goebels= first issue presented and hold that
Amy=s wages deducted under the savings
bond payroll deduction program were exempt property and therefore, not Aassets@ as defined under TUFTA.  Consequently, Katie and Brent cannot be
liable to Brandley for damages under TUFTA, and therefore we sustain the
Goebels= second issue.  Accordingly, we reverse the trial court=s judgment and render a take-nothing
judgment against Brandley in the Goebels= favor.  

 

/s/        Eva M.
Guzman

Justice

 

Judgment rendered and Opinion filed
August 30, 2005.

Panel consists of Justices Edelman,
Seymore, and Guzman. 

 

 











[1]  See Tex. Bus. & Com. Code Ann. '' 24.001B.012
(Vernon 2002).  





[2]  Herbert and
Amy filed a Chapter 7 bankruptcy proceeding on May 6, 2003, two years after
Brandley=s judgment.  At
oral argument, the parties agreed the bankruptcy proceedings were completed and
Brandley=s debt was Adischarged.@  The Goebels do
not raise any arguments concerning the bankruptcy.





[3]  The total
awarded, $12,000, appears to represent the value of the savings bonds at
maturity, purchased from March 2001 through August 2003. 





[4]  Specifically,
the interrogatory was as follows:

 

INTERROGATORY NO. 4:

 

Please identify every transfer made by your parents,
or at your parents= authorization or instruction, of savings bonds from
January 1, 2001 to the present, including amount, date, and to whom the
transfer was made. 

 

ANSWER:  My
parents, specifically my mother, has participated in an employer-sponsored
payroll deduction U.S. savings bond program monthly for her children since
December, 1995.

 

There is no explanation in the record for the
discrepancy in the parties= stipulations, which stated Amy entered into the
payroll deduction program in January 1996, and the response contained in the
interrogatory; however, the discrepancy is inconsequential here.  Another interrogatory requested Katie and
Brent Aidentify every asset transferred to you from January
1, 2001 to the present.@  The children
objected to this interrogatory as being overly broad and ambiguous, and did not
provide a response.  





[5]  As summary
judgment evidence, the Goebels attached an affidavit from Amy stating she began
purchasing the savings bonds through her employer=s
payroll-deduction program in 1996 in Brent=s name,
and in 1997, in Katie=s name.  She
averred the payroll-deduction program was established several years before
Brandley=s judgment as a savings fund for her children, and was
not intended to divert funds from any creditor. 
The Goebels also attached a copy of Burns v. Miller, Hiersche,
Martens & Hayward, P.C., 948 S.W.2d 317, 323 (Tex. App.CDallas 1997, writ denied), in support of their claim
that the wages transferred were exempt property.    





[6]  Although
Brandley initially alleged that the property actually transferred was the
savings bonds, he does not dispute that the bonds were purchased in the children=s names.  See
generally 31 C.F.R. '' 315.15, 315.36B.39,
315.5, 315.62 (2004) (providing that savings bonds are issued only in
registered form, the registration must express the actual ownership of and
interest in the bond, and the registration is conclusive of ownership).  Subsequent to his initial motion, Brandley
correctly argued that Amy=s wages were the asset transferred.  See id.; Tex. Bus. & Com. Code Ann. '
24.007(3) (providing that a transfer is made when it becomes effective between
the debtor and the transferee).





[7]  The following
was contained in the stipulation of facts: AThe
funds used to purchase all savings bonds at issue in this matter were wages
that either were or could have been paid to Amy Goebel.@ (Emphasis added). 
The inclusion of Aeither were@ cannot
be considered as conclusive evidence that Amy received a paycheck for any of
the subject wages.  See Rosenboom
Mach. & Tool, Inc. v. Machala, 995 S.W.2d 817, 822 (Tex. App.CHouston [1st Dist.] 1999, pet. denied) (stating that
ambiguous or unclear stipulations should be disregarded by the trial
court).  The Goebels have consistently
asserted that Amy never received the wages transferred.





[8]  We acknowledge
that this court has previously determined that a party claiming an exemption
bears the burden of proving that exemption. 
See Roosth v. Roosth, 889 S.W.2d 445, 459 (Tex. App.CHouston [14th Dist.] 1994, writ denied).  But, Brandley, as the summary judgment
movant, had the burden to establish Amy=s wages
failed to qualify as Acurrent wages@ once
the parties (1) agreed that Amy=s wages were transferred, and (2) that she had never
directly received those wages.  Because
it was Brandley=s contention that Amy=s Acontrol@ over
those wages served to strip them of their exempt status, it was his burden to
prove that proposition as a matter of law.  






[9]  See Tex. Civ. Prac. & Rem. Code Ann. ' 31.002 (Vernon 1997 & Supp. 2004B05).  





[10]  See
Guiberson v. Bohnefeld, No. 05-92-03011-CV, 1993 WL 175242, at * 1 (Tex.
App.CDallas May 24, 1993, writ denied) (not designated for
publication); Tarter v. Akin & McMullen, P.C., No. 05-90-01563-CV,
1991 WL 284467, at *5 (Tex. App.CDallas
December 20, 1991, no writ) (not designated for publication). 





[11]  In addition,
Brandley cites to a bankruptcy case decided in 1995, which concluded that under
Sloan v. Douglass, 713 S.W.2d 436, 440 (Tex. App.CFort Worth 1986, writ ref=d n.r.e.), the debtor=s
control over the wages was Aan element to
consider in determining whether wages are current.@  In re
Standel, 185 B.R. 227, 234 (N.D. Tex. 1995) (emphasis added).  The Standel court relied only on Sloan,
a pre-amendment case, in reaching its conclusion.  Regardless, Standel does not stand for
the proposition suggested by Brandley, that is, the ability to end a payroll
deduction program begun years prior to a creditor=s
receipt of judgment qualifies as Aconstructive
receipt@ of wages such that they lose their exempt character
for purposes of TUFTA.  Indeed, Standel
indicates that the debtor=s control over the wages is merely an element
to consider in determining whether the wages are Acurrent.@





[12]  Brandley cites
Tarter, 1991 WL 284467, at *5.