**Affirmed and Opinion Filed December 7, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00404-CV**

**CAROL YANCEY, Appellant**
**V.**
**SLJ COMPANY, LLC, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-04449**

## MEMORANDUM OPINION

Before Justices Schenck, Molberg, and Pedersen, III
Opinion by Justice Pedersen, III

This is an appeal from the trial court's April 30, 2021 Order Appointing Receiver (the Order). Appellant Carol Yancey challenges the Order in five appellate issues, contending that the trial court abused its discretion by (1) appointing a receiver under section 64.001 of the Texas Civil Practice and Remedies Code, (2) appointing a receiver for a natural person, (3) appointing a receiver to take possession of a judgment debtor's exempt assets, (4) appointing a receiver without evidence of the existence of assets not exempt from execution, and (5) appointing a

receiver without evidence of the existence of assets not readily subject to levy or attachment. We affirm the trial court's Order.

## Background

Yancey acknowledges that she signed a guarantee for a commercial lease in 2011. Appellee SLJ Company, LLC (SLJ) was the landlord to whom rent was due under that lease; the tenant was Yancey Energy L.L.C. The guarantee states that Yancey is "the owner and holder of a specific portion of the membership interests in Tenant" and that SLJ would not have entered into the lease without this "full and unconditional" guarantee by Yancey. As part of the guarantee process, Yancey gave SLJ a Personal Financial Statement dated June 15, 2010. That statement represented that Yancey's net worth was $3,416,580, which included $1,013,002 "cash on hand and in banks," and an additional $716,214 in "savings accounts." In 2019, when the then-tenant's rent payments were in arrears, SLJ sued Yancey and obtained a default judgment against her in the amount of $210,096.70, plus interest and attorney's fees. Yancey does not challenge either her liability under the guarantee or the default judgment process. The judgment remains unpaid.

In response to post-judgment discovery, which has included document production and Yancey's deposition testimony, SLJ learned that Yancey is the trustee of the Yancey Family Trust (the Trust). The Trust was created by the will of Yancey's husband, who died on February 11, 2010. The Trust is a spendthrift trust, and its beneficiaries are Yancey and her adult son. At her 2019 deposition, Yancey

–2–

estimated that the corpus of the Trust was approximately $1 million. She testified she is responsible for investing the funds held in the Trust and that she withdraws funds from the Trust as they are needed. A limited number of tax returns for the Trust indicated that distributions from the Trust between 2013 and 2018 were approximately equal to the income claimed by the Trust.[1]

SLJ has also been able to identify certain transactions made by Yancey since she signed the Personal Financial Statement and the guarantee:

- In May 2010, after her husband's death, Yancey entered into an Asset Purchase Agreement, which sold the assets of her husband's business for $35,000.[2]

- In August 2013, Yancey sold her Dallas residence for $590,000; she paid the remaining mortgage balance of $201,546 to Bank of America and paid miscellaneous amounts attendant to the sale.[3] Her net gain from the transaction was $353,024.31. At her deposition, Yancey testified that she used $60,000 from that amount for a down payment on her new home and put the rest of the funds into the Trust account.

- The Yanceys also owned a second home in Maine, which they purchased as joint tenants in May 2008. After her husband died, Yancey—as surviving joint tenant—conveyed the property first to an entity named The Caroline Marie Yancey Trust (with herself as trustee) and subsequently to the Trust (again, with herself as trustee).

---

[1] At the time of the hearing on the motion for a receiver, Yancey had produced the Trust's tax returns for 2013 through 2018. Those returns showed distributions of approximately $280,000. Returns were not produced for the years 2010 through 2012 or 2019.

[2] The sales agreement also provided for Yancey to receive income from percentages of revenue earned from ongoing—and some future—contracts; the agreement excluded royalty and patent assets, which Yancey retained.

[3] In her June 2010 Personal Financial Statement, Yancey had listed the present market value of the Dallas property at $776,000; she stated that the balance owed to Bank of America on that date was only $159,434.

Documents produced by Yancey represent that the Yanceys purchased the Maine property for $814,600 and the Trust sold it in October 2012 for a total of $776,000. Yancey testified at her deposition that she incurred a loss on this sale; as trustee of the Trust, she likewise represented to the Maine Revenue Services that she was incurring a loss of the sale.[4]

The only evidence we find in our record of personal funds held by Yancey is found in her deposition. When asked what she and her husband had in savings or checking accounts when he passed away, Yancey responded that the night before her husband died, he deposited $45,000 in their checking account, which she believed was an inheritance from his mother. As to savings, she replied only that "I don't think we had much." And as to current income—other than withdrawals from the Trust—Yancey testified that she receives $1,911 monthly from Social Security and Medicaid. Her monthly house payment is approximately $600. She testified she lives "very frugally"; her attorney characterized her Trust withdrawals as "modest amounts to cover Ms. Yancey's living expenses."

SLJ first moved for appointment of a receiver in this case in February 2020. That motion was denied. SLJ moved a second time for appointment of a receiver in November 2020. A hearing was held in January 2021, and we have a record of the proceeding. Counsel for SLJ pointed to the multi-million dollar loss of assets by Yancey since the time of her Personal Financial Statement. He argued that SLJ was

---

[4] In her June 2010 Personal Financial Statement, Yancey had listed the present market value of the Maine property at $1,100,000. She represented the original purchase price as $604,700 and stated that the balance owed on mortgages for the property on that date was $592,221.

–4–

unable to determine, based on the post-judgment discovery it had received, where all of those assets had gone, and he contended that appointment of a receiver was the only way to determine whether Yancey in fact owned assets that could satisfy its judgment. Counsel pointed to evidence, based on the transactions discussed above, that Yancey had in fact possessed significant amounts of cash at different times and that at least some of that cash had been made property of the Trust. Counsel for Yancey argued that "this is not a receivership case. This is a case where the Plaintiff has a big judgment. They're disappointed that they can't collect it from Ms. Yancey because she has nonexistent assets."

The trial court granted SLJ's motion and named Kevin Buchanan as the receiver. This appeal followed.

## Appointment of the Receiver

A judgment creditor is entitled to aid from the court to obtain satisfaction on the judgment; the court can help the creditor reach property of the debtor that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a). To that end, the court may "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* § 31.002(b)(3). We review the trial court's appointment of a receiver for an abuse of discretion. *Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex. App.— Dallas 2015, no pet.).

–5–

## The Applicable Statute

In her first issue, Yancey states that it was an abuse of discretion to appoint a receiver under section 64.001(a) of the Texas Civil Practice and Remedies Code because SLJ is not a secured creditor. Yancey is correct (a) that there is no evidence SLJ is a secured creditor, and (b) that section 64.001(a) provides for appointment of a receiver only when the creditor is secured. *See Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698, 704 (Tex. App.—Houston [14th Dist.] 2019, no pet.). However, there is no indication that SLJ ever relied upon section 64.001 for appointment of the receiver. We find no citation to section 64.001 anywhere in SLJ's argument for such an appointment, either in the trial court or on appeal. Nor does the trial court's Order purport to rely upon that section.

We conclude Yancey's first argument has no relevance to our review of this case. Accordingly, we discern no abuse of discretion by the trial court on this ground, and we overrule Yancey's first issue.

## The Object of the Receivership

In her second issue, Yancey complains that the trial court ordered "a receiver of Ms. Yancey's person." She argues that Texas law does not support appointment of a receiver of a natural person. The Order states that Mr. Buchanon "be and is appointed as receiver for Caroline Marie Yancey." We disagree that the Order specifically grants the receiver authority over Yancey's person. However, the Order does not specifically grant the receiver authority over Yancey's estate either. We

–6–

construe an ambiguous order in light of the motion on which it was granted. *Hahn v. Sw. Double D Ranch, LP*, No. 05-16-00111-CV, 2017 WL 1832505, at *2 (Tex. App.—Dallas May 8, 2017, no pet.) (mem. op.) (citing *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404 (Tex. 1971)). It is undisputed that SLJ's motion for appointment of a receiver asked the trial court specifically "[to] appoint a Receiver for the estate of Caroline Marie Yancey." No argument either in the parties' briefing or during the hearing on the motion alluded to a receivership of Yancey's person. By granting SLJ's motion, it is apparent that the trial court intended to appoint a receiver over the estate of appellant, which is unquestionably within the trial court's discretion. *See* CIV. PRAC. & REM. § 31.002(b)(3).

We conclude the trial court did not abuse its discretion by appointing a receiver over Yancey's estate. We overrule appellant's second issue.

*The Assets Subject to the Receiver's Authority*

In her third issue, appellant contends that the Order exceeds the trial court's authority because it does not limit the receiver's authority to non-exempt property. As we discussed above, section 31.002 provides that a judgment creditor is entitled to assistance from the court to reach property from the debtor "that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities." *Id.* § 31.002(a). A trial court may authorize a receiver to take possession of "the nonexempt property" of the judgment debtor." *Id.* § 31.002(b)(3). We interpret the trial court's Order to invest the receiver in this case only with authority that is

compliant with section 31.002. *See Gutman v. De Giulio*, No. 05-20-00735-CV, 2022 WL 574968, at *7 (Tex. App.—Dallas Feb. 25, 2022, no pet.) (mem. op.) ("By definition, the Receiver's authority extends only to non-exempt property."). We conclude the trial court was not required to identify the property subject to the receiver's authority. If the receiver were to attempt to take control of exempt property, the judgment debtor could always seek relief from the trial court that appointed the receiver. *See, e.g., id.*, at *3 ("A court that appoints a receiver to assist with enforcement thus retains 'continuing jurisdiction and control' over the receiver and receivership property until concluding the proceeding."). There is no such complaint before us.

The receiver's authority in this case is limited by statute; we conclude that the trial court did not abuse its discretion when it did not specifically set forth those statutory limits in its Order. We overrule Yancey's third issue.

*Evidence of Ownership of Exempt Assets*

In her fourth issue, Yancey argues that the trial court abused its discretion by ordering a receivership because there was no evidence that Yancey owned non-exempt assets. She contends that evidence that she once had cash proceeds from any of the transactions discussed above does not prove that she currently has that amount of cash on hand. Yancey relies on the statutory protection for spendthrift trusts, arguing that the Trust accounts are not subject to execution for her debts. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 326 (Tex. App.—

–8–

Dallas 1997, writ denied). *Burns* states that: "Spendthrift trust assets while in the hands of the trustees, before being distributed, are exempt from attachment, execution, garnishment, or seizure, and therefore, are not subject to turnover." *Id.* (citing TEX. TRUST CODE ANN. § 112.035; CIV. PRAC. & REM. § 31.002(a)(2)). Stated differently, "Neither the corpus, the accrued income which has not been paid to the beneficiary or the future income to be paid to a beneficiary of a spendthrift trust are subject to the claims of the creditors of the beneficiary while those amounts are in the hands of the trustee." *In re BancorpSouth Bank*, No. 05-14-00294-CV, 2014 WL 1477746, at *2 (Tex. App.—Dallas Apr. 14, 2014, no pet.) (mem. op.).

SLJ contends that Yancey has improperly attempted to shelter her personal funds from creditors by placing those funds within the Trust or otherwise hiding her assets. Yancey has conceded that she placed some proceeds from sale of her Dallas residence in the Trust's account. And documents indicate that any funds received from the sale of the Maine property were received in the name of the Trust. But Yancey argues that she has, over time, withdrawn more money from the Trust than the evidence shows she deposited in its accounts. We agree with her that if she comingled her own money with trust funds, we will presume that her own funds were expended first. *See Batmanis v. Batmanis*, 600 S.W.2d 887, 890 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

We cannot, however, assume that the transactions pieced together by SLJ—which raise accounting questions based upon Yancey's own records—necessarily

represent the entire universe of transactions made by Yancey that could implicate her personal funds and Trust funds. SLJ has identified assets Yancey represented that she owned in 2010, assets that purportedly calculated her net worth at more than $3.4 million. SLJ has identified significant transactions—sale of two residential properties and of a business—that resulted in personal funds to Yancey. But Yancey asserts that "the truth was and is that Ms. Yancey has no non-exempt assets." If indeed those various funds that are or were in Yancey's possession are exempt from a receiver's authority, it is her burden to prove that is true. We have made the parties' burdens in this regard clear: the judgment creditor bears the burden of tracing assets to the judgment debtor, but it is the judgment debtor's burden to show that those assets are exempt from execution. *In re C.H.C.*, 290 S.W.3d 929, 931 (Tex. App.—Dallas 2009, no pet.). Moreover, it is not sufficient for the judgment debtor to assert that the funds have been spent without giving an accounting of the expenditures. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991) ("All unaccounted for cash is presumed to be in the possession of the debtor; simply asserting 'I spent it' is unacceptable.").

We conclude that SLJ sufficiently identified personal funds in the possession of Yancey and offered evidence that at least some of those funds found their way into Trust accounts. We conclude further that the trial court did not abuse its discretion in appointing a receiver to attempt to identify amounts within those or

–10–

other personal funds that may be available to satisfy SLJ's judgment. We overrule Yancey's fourth issue.

*Assets Not Readily Subject to Levy or Attachment*

The entirety of Yancey's fifth issue is composed of this single sentence: "When there is no evidence of non-exempt assets it follows that there is no evidence of non-exempt assets that are not readily subject to levy or attachment." We have held that bare assertions of error, without argument or authority, waive error. *Teter v. Comm'n For Lawyer Discipline*, 261 S.W.3d 796, 799 (Tex. App.—Dallas 2008, no pet.). If an appellant fails to brief a complaint adequately, she waives that issue on appeal. *Id.*

Moreover, we have already concluded that SLJ identified apparently non-exempt assets sufficiently to trigger Yancey's burden to prove the assets *are* exempt. We overrule Yancey's fifth issue.

**Conclusion**

We affirm the trial court's Order.

/Bill Pedersen, III//
_____
BILL PEDERSEN, III
JUSTICE

210404f.u05
Do Not Publish
TEX. R. APP. P. 47

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CAROL YANCEY, Appellant

No. 05-21-00404-CV    V.

SLJ COMPANY, LLC, Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-04449. Opinion delivered by Justice Pedersen, III. Justices Schenck and Molberg participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee SLJ Company, LLC recover its costs of this appeal from appellant Carol Yancey.

Judgment entered this 7th day of December, 2022.