Dennis KAUFMANN and Kim Kaufmann, Individually, and as Next Friends of Drew Kaufmann, a minor, Appellants,

v.

Veronica MORALES and Robert Morales, Individually, and as Next Friends of Royce Morales, a minor, Appellees.

No. 14–02–00181–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 5, 2002.

Ramsey N. Zein–Eldin, Galveston, for appellants.

David P. Salyer, Kenneth J. Bower, Galveston, William M. Briscoe, Houston, for appellees.

Panel consists of Chief Justice BRISTER, Justices HUDSON and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants, Dennis and Kim Kaufmann, individually, and as next friends of Drew Kaufmann, bring this interlocutory appeal of the trial court's temporary injunction order. The temporary injunction enjoined the Kaufmanns from further liquidating assets. We conclude the trial court abused its discretion and declare the order void for failing to contain a trial date for the permanent injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

Veronica and Robert Morales, individually, and as next friends of Royce Morales, brought suit against the Kaufmanns as a result of an injury Royce suffered while playing with the Kaufmanns' son.[1] Shortly after receiving notice of the Morales' intent to sue, the Kaufmanns built an addi-

---

1. Royce apparently lost sight in one of his eyes. The injury appears to have been caused by a bow and arrow set owned by the Kauf- manns' son; however, the temporary injunction hearing contains very little information about the incident.

tion to their house. Fearing that the Kaufmanns were attempting to make themselves judgment proof, the Moraleses initiated temporary injunction proceedings to prevent liquidation of assets. This accelerated interlocutory appeal is from the temporary injunction order in which the trial court imposed restrictions on the Kaufmanns' use of their assets.

## STANDARD OF REVIEW

To obtain injunctive relief, a party must show (1) a harmful act, (2) imminent, irreparable harm, and (3) no adequate remedy at law. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Assoc.*, 25 S.W.3d 845, 849 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A trial judge has broad discretion in deciding whether to grant or deny temporary injunctions, and the standard of review is a clear abuse of discretion. *See Liberty Mut. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex.App.-Houston [14th Dist.] 1991, no writ). The trial court abuses its discretion when "the law is misapplied to established facts, or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975). Additionally, the temporary injunction order entered by the trial court must comply with Rule 683 of the Texas Rules of Civil Procedure. Orders are strictly construed to ensure that they comply with the letter of the rule. *See InterFirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex.1986).

## DISCUSSION

The Kaufmanns raise four issues on appeal. First, they argue that the order improperly restrains construction of their home because Texas protects additions to homesteads. Second, under the Uniform Fraudulent Transfer Act ("UFTA"), the Kaufmanns argue a judgment must be rendered before a trial court can issue a temporary injunction. *See* Tex. Bus. & Com.Code Ann. § 24.001. Third, they contend the temporary injunction in this case is overly broad. Finally, the Kaufmanns argue that the injunction is void as a result of a failure to comply with Rule 683. We will address only the last three issues; the first issue is moot because the Kaufmanns have completed the addition to their home.

## I. Unliquidated Claim under the UFTA

The Kaufmanns claim that there are two reasons the trial court erred in entering a temporary injunction based on the UFTA. First, the Kaufmanns argue the Moraleses cannot and did not establish a fraudulent transfer under the Act. Second, the Kaufmanns argue that a temporary injunction is improper because the claim is unliquidated. We consider only the sufficiency claim because it disposes of this issue, rendering the second complaint moot.

A transfer is fraudulent as to future creditors if it is made with "actual intent to hinder, delay, or defraud any creditor of the debtor" or if the transfer is made "without receiving a reasonably equivalent value in exchange for the transfer or obligation." Tex. Bus. & Com.Code Ann. § 24.005(a)(1)–(2). The purpose of the UFTA is to "prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

The Kaufmanns cashed two certificates of deposit and built an addition to their home—something they testified they had been planning since they purchased the

home; the addition was a work/storage area for Mr. Kaufmanns' appliance-repair business. They took the remaining proceeds and paid other creditors, such as their children's school. These actions do not clearly fall under section 24.005(a). There was no "transfer" of the assets as contemplated by the Code and no showing that the Kaufmanns did not receive a reasonably equivalent value in exchange for the transfer. In fact, it overstrains the confines of this section to try to apply it here.

The Code provides guidance when a court is determining if a transaction is fraudulent. To show intent to defraud, the Texas Business and Commerce Code lists eleven factors to consider, including the following:

(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

See TEX. BUS. & COM.CODE ANN. § 24.005(b)(1)–(11).

None of the eleven factors listed in the Code apply here. To begin with, the parties have cited us no cases in which a court held that cashing a certificate of deposit constituted a transfer. We also have found none. But, even if it did qualify as a transfer, the other factors either do not apply or insufficient evidence was submitted for us to tell if they apply.

The first factor requires a transfer made or obligation incurred to an insider. As we noted, there was no transfer to a third party. The Kaufmanns cashed their own certificate of deposit and used the money to build an addition to their home.

The second factor is irrelevant because it assumes a transfer was made to a third party but that the debtor retained control. The third factor inquires into whether the transfer was concealed. Again, this is irrelevant; the Kaufmanns cashed their own certificates of deposit. They did not tell the Morales about it, but they were not required to.

For the fourth factor to apply, a transfer must be made and a lawsuit filed. Although a lawsuit was filed, no asset was transferred to a third party. Factors two and three do not apply because they presume a transfer to a third party. The fifth factor asks if the transfer involved substantially all of the debtor's assets. This record does not answer this question because no evidence was presented on this factor. The sixth factor is irrelevant because the Kaufmanns clearly did not abscond. The seventh factor is rather inconclusive. The Kaufmanns did cash (remove) their certificates of deposit from the bank. The eighth factor—which involves sales of the assets or obligations incurred—does not apply here. We also cannot apply the ninth factor, which asks about the debtors' solvency, because no evidence was introduced regarding the Kaufmanns' financial solvency or insolven-

cy. The tenth factor asks if the transfer was made after a substantial debt was incurred. Here, no debt exists yet. In fact, when this injunction was entered, it was unclear which playmate actually injured the Morales's son or whether the Morales's son was partly to blame. The eleventh factor, which involves a transfer by the debtor to a third party who then transfers to an insider, does not apply.

The typical fraudulent transfer cases have underlying elements of purposeful avoidance of creditors or feigned relinquishment of assets that are absent here. In *Jackson Law Office, P.C. v. Chappell,* the appellant transferred a home, proceeds, and a second lien to her mother and boyfriend to protect appellant's assets from going to attorney's fees. 37 S.W.3d 15, 27–28 (Tex.App.-Tyler 2000, pet. denied). In *Coleman Cattle Co., Inc. v. Carpentier,* the court found as a matter of law that when appellant transferred property into his various corporations, it was to avoid paying a judgment and thus the transfer was deemed fraudulent. 10 S.W.3d 430, 433–34 (Tex.App.-Beaumont 2000, no pet.). Finally, in *Radney v. Clear Lake Forest Cmty. Ass'n, Inc.,* appellant sold his home, which had injunctions and a suit pending against it, to an international corporation. 681 S.W.2d 191, 197 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). The jury found appellant's actions were intended to hinder the creditor receiving payment. *See id.* Unlike these cases, the Moraleses did not establish the Kaufmanns' activity was a fraudulent transfer.

In short, this record and these facts do not support the trial court's conclusion that sections 24.005(a) and (b) apply to this case. We sustain this issue.

### III. Overly Broad Temporary Injunction

■ In the Kaufmanns' third issue, they correctly argue the trial court abused its discretion by entering an overly broad temporary injunction.

■ We agree that the injunction is overly broad because it improperly restrains the Kaufmanns' legal rights.[2] A temporary injunction is an extraordinary remedy and should be carefully regulated. *See Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961). The temporary injunction should be specific enough to inform the defendants of the acts they are refrained from doing, but not so broad as to "prohibit the enjoyment of lawful rights." *Kulkarni v. Braeburn Valley W. Civic Ass'n, Inc.,* 880 S.W.2d 277, 278 (Tex.App.-Houston [14th Dist.] 1994, no writ).

The order below provided the following: It is therefore, ORDERED, ADJUDGED and DECREED that Plaintiff's Amended Application for Injunctive Relief and Temporary Injunction be GRANTED, and that Defendants Dennis Kaufmann and Kim Kaufmann are commanded forthwith to desist and refrain from continuing construction of the addition to their homestead ... and from selling, transferring, donating, or in any way disposing of any assets, including but not limited to cash, certifi-

2. The Moraleses also contend the Kaufmanns did not raise the argument at trial that the temporary injunction was overly broad. However, a party does not waive its complaint to an overly broad temporary injunction at the temporary injunction hearing. The responsibility of the appeals court is to review the limited question "of whether the trial court abused its discretion" by denying or granting the motion. *See Henke v. Peoples State Bank of Hallettsville,* 6 S.W.3d 717, 720 (Tex.App.-Corpus Christi 1999, pet. dism'd w.o.j.).

cates of deposit, money markets, stocks, bonds, mutual funds, securities of any kind, personal property, and real property (including [a rental property]) and Defendant Dennis Kaufmann's one-half interest in his father's house in Texas City, Texas, except Defendants shall be permitted to use cash on hand as well as personal income as is necessary to pay for the necessities of life, including food and clothing, attorney's fees incurred in this matter, and such expenses and obligations incurred prior to March 5, 2001, including but not limited to taxes, mortgage payments, credit card bills for items purchased prior to March 5, 2001, utility bills, insurance premiums, loan obligations, and other bills for items and debts incurred prior to March 5, 2001. Defendants are only permitted to pay the monthly premium required on such credit card or loan payments.

It is further ORDERED that Dennis and Kim Kaufmann be permitted to pay for their children's tuition, Kim Kaufmann's tuition, and tithe at the church of their choice up to $100.00 per month.

■ This injunction order improperly restricted the Kaufmanns' legal rights in several ways. This injunction has stripped the Kaufmanns of their legal right to pay creditors in the order they choose.[3] The injunction states that the Kaufmanns cannot pay off any credit card balances after March 5, 2001. Instead, the Kaufmanns are allowed to pay only the monthly required minimum.[4] The order also limited the amount of money the Kaufmanns can give to a church without any evidence in the record of the past tithing habits of the Kaufmanns.

This temporary injunction clearly does more than prevent the possibility of the Kaufmanns making fraudulent transfers; it restrains the Kaufmanns from enjoying many of their legal rights. We find the temporary injunction overly broad because it attempts to freeze assets and legal rights of the Kaufmanns that are unrelated to the claim.

## IV. Setting the Cause for Trial

■ Finally, the Kaufmanns contend the order is void as a result of the absence of a trial setting. We agree.

■ Rule 683 of the Texas Rules of Civil Procedure provides, "[e]very order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." This provision is mandatory; a failure to include a trial setting is grounds for voiding the injunction. *See InterFirst Bank San Felipe*, 715 S.W.2d at 641. Even if the Kaufmanns had not raised this point of error, we would be required to void the order. *See Greathouse Ins. Agency, Inc. v. Tropical Invs., Inc.*, 718 S.W.2d 821, 822 (Tex.App.-Houston [14th Dist.] 1986, no writ).

■ The Moraleses claim that this requirement is met because the docket sheet, signed almost two months after the order, sets the trial for the "first jury trial period in February 2003 at 9:00 a.m." But including a general date on a docket sheet does not meet the requirements or the purpose of Rule 683. *See Wyatt v. Cowley*, 74 S.W.3d 576, 577 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.).

---

3. "In the absence of a law declaring preferences invalid, every debtor has the legal right to pay one or more of his debts with any money or property he has." *Adams v. Williams*, 112 Tex. 469, 248 S.W. 673, 676 (1923).

4. We assume the trial court intended the Kaufmanns could only pay the monthly minimum, though it stated "monthly premium."

There are at least two reasons for requiring a trial date on the order. One is to prevent the injunction from becoming permanent. *See Eastern Energy v. SBY P'ship,* 750 S.W.2d 5, 6 (Tex.App.-Houston [1st Dist.] 1988, no writ). Although a docket sheet notation arguably might meet this particular purpose (an issue we do not reach), it does not meet a second, more specific, purpose of the rule. That purpose is that every order must be specific and not "reference to the complaint or other document." TEX.R. CIV. P. 683. The order must be complete on its face. It is important for trial judges or parties to read the original order and have before them all information relevant to the injunction. A vague date on a docket sheet, a completely separate document, is not sufficient to meet this purpose.[5]

In conclusion, the trial court committed reversible error when it applied the Uniform Fraudulent Transfer Act, and entered an overly broad injunction that improperly restrained the Kaufmanns' legal rights. In addition, the temporary injunction is void because it contains no trial date; we order the injunction dissolved.

**5.** A footnote from a recent case discussed the definition of "setting the cause for trial." It provided that "Rule 683 does not expressly require that a trial *date* be set. Rather, it simply provides that the injunction order set the cause for trial on the merits." *EOG Res., Inc. v. Gutierrez,* 75 S.W.3d 50, 53 (Tex.App.-San Antonio 2002, no pet.). According to *EOG Res., Inc.,* a few courts have required a specific trial date in the order. *Id.* The court then looked at the definition of "setting down" a trial date in Black's Law Dictionary that provided " '[t]o "set down" a cause for trial or hearing at a given term is to enter its title in the calendar, list, or docket of causes which are to be brought on at that term.' " *Id.* (citing BLACK'S LAW DICTIONARY 955 (Abridged 6th Ed.1991)). Therefore, Rule 683 "implicitly requires the injunction to order the cause be calendared on the trial court's docket." *Id.*