**Affirmed in Part, Reversed in Part, and Remanded in Part and Opinion filed May 15, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00053-CV

---

### CAROLYN C. JAMES, Appellant,

### V.

### MICHAEL EASTON AND PETER J. RIGA, Appellees.

---

**On Appeal from the 61st District Court
Harris County
Trial Court Cause No. 2010-12915**

---

## OPINION

This is an appeal from a denial of a temporary injunction and a dismissal on special exceptions. Appellant Carolyn C. James sued appellees Michael Easton and Peter J. Riga for intentional infliction of emotional distress and tortious interference with a contract. At the core of this case are inappropriate messages Easton sent to James and the medical expert she retained in three unrelated cases. We affirm the trial court's denial of

the application for temporary injunction, reverse the trial court's dismissal of James's claims based on special exceptions, and remand for further proceedings.

I

This suit arose out of several different ongoing proceedings concerning James's mother, who suffers from dementia. Two cases are pending in probate court, and one case is pending in the 61st District Court of Harris County. Easton has intervened in all three cases. James brought this suit separately in response to Easton's out-of-court behavior in these other cases. The Honorable Al Bennett was the presiding judge in this case and also presides over the other pending case in the 61st District Court.

Following his interventions into the other cases, Easton began to directly contact James and her medical expert, even though James was represented by counsel. Easton represented himself in these proceedings, and though he is not an attorney, he often sent written correspondence to James and her expert on Riga's letterhead. Riga is an attorney, as his letterhead makes clear. Riga personally appeared at a hearing for one of the underlying cases but is neither a party nor a party's attorney in any of those cases.[1]

Dr. George Glass is James's medical expert in all three of the underlying cases, and Easton first approached him after a deposition in one of those cases. Easton grabbed Glass's necktie and put his hand on Glass's shoulder before asking the doctor to talk with him privately. When Glass refused, Easton took out his cell phone and snapped a picture of Glass. Shortly thereafter, Glass received a letter from Easton—on Riga's letterhead— asserting that Glass could be imprisoned for up to six months. Later communications to Glass from Easton threatened $100,000 in sanctions and repeatedly referred to the doctor as a "quack" and an "ass." Glass testified that he felt harassed and threatened by Easton as a result of these communications.

---

[1] Riga does, however, share a fax number with Susan Norman, who is representing a party adverse to James in at least one of the underlying cases.

Easton's interactions with James were even more inappropriate. He sent an e-mail message to James with the subject line "Coin Toss." In its entirety, the body of the e-mail read

............whats the most you've ever lost in a coin toss?
.......................................................................**Call it-- Friendo!**

Attached to the e-mail was a picture of Javier Bardem's character from the movie *No Country for Old Men*. James had seen the movie and knew that Bardem's character, Anton Chigurh, was a murderer. In the movie, Chigurh would sometimes ask another character, "What's the most you've ever lost in a coin toss?" The other character's violent death, at Chigurh's hand, usually followed the question. James testified she felt threatened by the e-mail and "that [her] life would be on the line" if she continued to pursue the three underlying cases.

Less than a week later, Easton sent James another e-mail that included the following:

> Attention, Probate Shoppers, the "blue light" special in Aisle 2 will end at midnight tomorrow, tick, tock, tick, tock. In the words of "Dirty Harry" Well, being that this is a Chapter 74 (Objection) Magnum, the world's most powerful "hand gun" (assignment) It can "blow your head clean off"-- you've got to ask yourself this question: " do I feel lucky?"---- well, do ya punk?.. tick tock, tick tock.

James again felt threatened. She sued Easton and Riga, seeking an injunction. The case was transferred to the 61st District Court, where one of the underlying cases was pending. Easton and Riga filed special exceptions and moved to dismiss.

The trial court heard James's application for temporary injunction. James and Glass testified about the communications they received from Easton and their reactions to them. A second expert testified that Easton's e-mails "raise[d] the specter of an offense in Texas known as a 'terroristic threat.'" At the close of James's case in chief at the injunction hearing, the trial court granted Riga's "motion for directed verdict" and denied James's application for injunctive relief. James appealed this ruling. James subsequently

filed an amended petition alleging intentional infliction of emotional distress and tortious interference with the Glass-James contract. Easton and Riga both filed special exceptions, asserting that James's petition fails to state any claim under Texas law because complaints by one litigant about an opposing litigant's conduct in a lawsuit must be remedied in the lawsuit in which the conduct occurred and may not be the basis for independent tort claims. The trial court granted the special exceptions and dismissed all of James's claims. This appeal followed.[2]

## II

James raises five issues on appeal: (1) it was error to grant the appellees' special exceptions; (2) the directed verdict in favor of Riga was impermissibly based solely on special-exceptions evidence; (3) dismissal on special exceptions does not prevent a plaintiff from re-filing, but the trial court's order implies it was made with prejudice; (4) in light of the outrageous nature of Easton's behavior, the trial court erred in denying the motion for temporary injunction; and (5) the trial court erred by failing to enforce the anti-contact rule and the Texas Rules of Civil Procedure against the appellees.

## A

In her first issue, James attacks the dismissal on special exceptions. When, as in the case under review, a trial court dismisses a case upon special exceptions for failure to state a cause of action, we review that issue of law using a de novo standard of review. *Filipp v. Till*, 230 S.W.3d 197, 203 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When reviewing a dismissal based upon special exceptions, we also must accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in the plaintiff's pleadings. *Id.* If a pleading states a cause of action, the trial court errs in dismissing based upon special exceptions. *Id.*

---

[2] Upon final judgment below, this court dismissed as moot the separate appeal on the temporary injunction. *See James v. Riga*, No. 14-10-00471, 2011 WL 303804 (Tex. App.—Houston [14th Dist.] Jan. 27, 2011, no pet.) (mem. op.).

An attorney generally has immunity from claims by an opposing party based upon conduct the attorney undertook in the representation of a client, but this immunity does not apply to alleged torts based upon the attorney's fraudulent or malicious conduct. *See Lackshin v. Spofford*, No. 14-03-00977-CV, 2004 WL 1965636, at \*3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2004, pet. denied) (mem. op.). The appellees did not assert this attorney immunity in their special exceptions, nor did they argue that this immunity should be expanded to apply to the claims involving pro se litigants or attorneys not representing a party. The appellees did not assert immunity at all. Instead, the sole basis for appellees' special exceptions is their assertion that James's petition fails to state any claim under Texas law because complaints by one litigant about an opposing litigant's conduct in a lawsuit must be remedied in the lawsuit in which the conduct occurred and may not be the basis for independent tort claims. If this assertion is incorrect, then the trial court erred in granting the special exceptions.[3]

The appellees have not cited, and research has not revealed, any case in which a court held that all complaints by one litigant about an opposing litigant's conduct in a lawsuit must be remedied in the lawsuit in which the conduct occurred and may not be the basis for independent tort claims. It cannot be said that, as a matter of law, one litigant can never assert a tort claim against an opposing litigant based upon the opposing litigant's conduct in the litigation. *See Hunt v. Baldwin*, 68 S.W.3d 117, 130–33 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (analyzing the merits of wrongful-execution and fraud claims asserted by judgment debtor against judgment creditors in lawsuit separate from the underlying litigation). Nor do we believe that the ability of the trial court in the underlying lawsuit to impose sanctions on litigants is a sufficient basis to

---

[3] Appellees argue that this court should summarily affirm the trial court's special-exceptions ruling because James has not attacked this assertion but has argued only that the appellees are not entitled to immunity from suit, an argument that the appellees did not assert in their special exceptions. James has assigned error as to the trial court's granting of the special exceptions. Though in parts of her briefing James incorrectly characterizes the appellees' argument as being based upon immunity, liberally construing her brief, we conclude that she has sufficiently argued that the ground asserted in the special exceptions lacks merit.

support a rule disallowing all such claims. Indeed, if an attorney engages in fraudulent or malicious conduct in the course of representing his client, an opposing party may assert intentional tort claims against the attorney based upon this conduct. *See Poole v. Houston & T.C. Ry.*, 58 Tex. 134, 137 (1882) (holding that attorneys acting on behalf of their clients are not shielded from liability for their fraudulent conduct because fraudulent acts are "entirely foreign to the duties of an attorney"); *Lackshin*, 2004 WL 1965636, at *3 (noting that, though attorneys owe no general negligence duty to opposing parties, they are still subject to liability to nonclients, including opposing parties, based on their fraudulent or malicious conduct, even if the attorneys' conduct was in the course of representing their client); *Toles v. Toles*, 113 S.W.3d 899, 911–12 (Tex. App.—Dallas 2003, no pet.) (holding that attorney who represented former husband in divorce action was not immune from claim of former wife alleging attorney aided and abetted a breach of fiduciary duty by the receiver in the underlying litigation); *Querner v. Rindfuss*, 966 S.W.2d 661, 666–70 (Tex. App.—San Antonio 1998, pet. denied) (finding attorney in probate litigation was not immune from liability for alleged conspiracy to engage in fraud); *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.—Houston [1st Dist.] 1985, no writ) (holding that attorney may be liable to opposing party in a transaction for conspiracy to defraud the opposing party because attorney immunity does not apply to attorney's allegedly fraudulent or malicious conduct). Likewise, if Easton engaged in fraudulent or malicious conduct in the underlying litigation that would support liability for an intentional tort, James should not be barred from asserting this claim because Easton's conduct happened to occur in a litigation context. *See Hunt*, 68 S.W.3d at 130–33. If Riga, neither a party nor an attorney representing a party in the underlying litigation, engaged in fraudulent or malicious conduct in the underlying litigation that would support liability for an intentional tort, James should be allowed to assert intentional tort claims against Riga based upon this conduct. James has asserted claims for tortious interference with contract and intentional infliction of emotional distress, which are intentional torts.

6

The appellees rely upon *Toles v. Toles* to support their contention that they were entitled to dismissal as a matter of law. *See* 113 S.W.3d at 909–11, 918. *Toles* arose out of a bitter divorce, and involved a suit by a former wife against her former husband and the lawyers who represented him throughout the divorce. *Id.* at 905. The *Toles* court discussed the general rule of attorney immunity from claims by an opposing party based upon conduct the attorney undertook in the representation of a client. *See id.* at 909–11. In the course of this discussion, the court noted that an attorney who commits misconduct in litigation is subject to sanction by the trial court in that litigation. *See id.* at 911. The *Toles* court never held that the availability of sanctions means that attorney misconduct during litigation can never be the basis of independent tort claims. *See id.* at 909–13. On the contrary, the *Toles* court held that the ex-husband's attorneys were potentially liable for aiding and abetting a breach of fiduciary duty, even though their allegedly actionable conduct was undertaken during the representation of an opposing party in the underlying litigation. *See id.* at 912.

In another part of the *Toles* opinion, the court held that the ex-husband, as an opposing litigant, did not owe a negligence duty to his ex-wife.[4] *See id.* at 917–18. In discussing the reasons for this ruling, the *Toles* discussed the ability of the trial court in the underlying litigation to sanction parties for improper litigation conduct. *See id.* The appellees in *Toles* did not advance the legal theory advanced by the appellees in the case under review. *See id.* at 909–11, 918. The *Toles* court neither held nor stated that all complaints by one litigant about an opposing litigant's conduct in a lawsuit must be remedied in the lawsuit in which the conduct occurred and may not be the basis for independent tort claims. *See id.* Indeed, the *Toles* court addressed the merits of the ex-wife's claim against her ex-husband for intentional infliction of emotional distress based upon conduct in the underlying litigation. *See id.* at 920–21.

---

[4] James is not asserting negligence claims.

We conclude that the sole basis for the appellees' special exceptions lacks merit, and therefore, the trial court erred in granting these special exceptions.[5] Accordingly we sustain the first issue and reverse the trial court's dismissal of James's claims on special exceptions.[6]

B

In her second issue, James complains that the trial court erred by directing a verdict in favor of Riga. Though the trial court stated that it granted Riga's "motion for directed verdict" at the close of James's case-in-chief at the temporary injunction hearing, we conclude that the substance of this ruling was that the trial court denied the application for temporary injunction after James presented her evidence and without hearing any evidence from Riga. The trial court was not required to hear evidence from Riga before denying James's application for injunctive relief. Accordingly, we overrule the second issue.

C

In her fourth and fifth issues, James complains that it was error for the trial court to deny her application for a temporary injunction against Easton. Here, we disagree.

To obtain injunctive relief, a party must show (1) a harmful act, (2) imminent, irreparable harm, and (3) no adequate remedy at law. *Kaufmann v. Morales*, 93 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, no pet.) A trial judge has broad discretion in deciding whether to grant or deny temporary injunctions, and the standard of review is a clear abuse of discretion. *Id.* The trial court abuses its discretion when the law is misapplied to established facts, or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery. *Id.* In reviewing the trial court's exercise of discretion, the appellate court must draw all legitimate inferences from the evidence in the light most favorable to the trial court's

---

[5] In so ruling, we do not address the merits of James's claims or any argument that the appellees may assert against James's claims other than the ground in the special exceptions.

[6] Because we sustain the first issue, were need not address the third issue.

8

decision. *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.). When no findings of fact or conclusions of law are filed, the trial court's determination of whether to grant or deny a temporary injunction must be upheld on any legal theory supported by the record. *Id.*

Based on the evidence presented in this case, James established that Easton had previously harassed her and Dr. Glass, but she did no more than establish a theoretical possibility Easton would continue those antics in the future. Viewing the evidence in the light most favorable to the trial court's order, we hold that the trial court reasonably could have concluded that James failed to establish that she faced probable, imminent, and irreparable injury in the absence of a temporary injunction. *See EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 697–98 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Consequently, the trial court did not abuse its discretion in denying the application for temporary injunction. We overrule James's fourth and fifth issues.

* * *

For the foregoing reasons, we affirm the trial court's denial of the application for temporary injunction, reverse the trial court's dismissing James's claims on special exceptions, and remand for further proceedings consistent with this opinion.[7]

/s/    Jeffrey V. Brown
        Justice

Panel consists of Justices Frost, Brown, and Jamison.

---

[7] Appellees have filed a motion to strike James's reply brief insofar as it pertains to matters outside the record. While we do not base our analysis or decision on James's references to such matters, we need not and do not strike these portions of the reply brief. The motion is denied.