Opinion issued May 30, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00160-CV

————————————

## IN RE ESTATE OF MARY OLIVE HULL CALKINS, Deceased

On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Case No. 441165

## O P I N I O N

Richard Stephen Calkins and his sister Carolyn, who is not a party in this appeal, have litigated, for years, the question of who should manage the assets of their mother Mary Olive Hull Calkins.[1] Now that Mary Olive is deceased, her children are litigating the probate of her estate.

---

[1]  The Calkins family litigation encompasses multiple lawsuits filed in various district and probate courts in at least two counties and has resulted in at least a dozen appeals

Maurice Bresenhan is the estate's court-appointed administrator. When Calkins, through his attorney Susan Norman, declined to provide Bresenhan certain information he asserted was necessary for preparation of Mary Olive's final individual and the estate's income tax returns, Bresenhan moved for an order compelling both Calkins and Norman to produce the information. The probate court granted the motion, but, when the production deadline came, Calkins and Norman did not turn anything over to Bresenhan and instead jointly moved to dismiss Bresenhan's "legal action" under the Texas Citizens Participation Act (TCPA or the "Act"). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. Calkins and Norman

---

and original proceedings in the First and Fourteenth Courts of Appeals, including appeals not only involving the proposed guardianship of Mary Olive and her estate but also the administration of a family trust. *See, e.g.*, *In re Calkins*, No. 01-15-01009-CV, 2015 WL 9480099 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, orig. proceeding); *James v. Calkins*, 446 S.W.3d 135 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *James v. Underwood*, 438 S.W.3d 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *James v. Goehrs*, No. 01-12-00445-CV, 2014 WL 810851 (Tex. App.—Houston [1st Dist.] Feb. 27, 2014, no pet.) (per curiam) (mem. op.); *In re Estate of Calkins*, Nos. 01-11-00731-CV to 01-11-00734-CV, 2013 WL 4507923 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (per curiam) (mem. op.); *James v. Easton*, 368 S.W.3d 799 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Calkins v. James*, No. 01-12-00036-CV, 2012 WL 344955 (Tex. App.—Houston [1st Dist.] Feb. 2, 2012, no pet.) (per curiam) (mem. op.); *James v. Easton*, No. 14-10-00471-CV, 2011 WL 303804 (Tex. App.—Houston [14th Dist.] Jan. 27, 2011, no pet.) (per curiam) (mem. op.); *In re James*, No. 01-10-00751-CV, 2011 WL 148263 (Tex. App.—Houston [1st Dist.] Jan. 13, 2011, orig. proceeding) (per curiam) (mem. op.); *Calkins v. James*, No. 01-10-00574-CV, 2010 WL 5395731 (Tex. App.—Houston [1st Dist.] Dec. 30, 2010, no pet.) (per curiam) (mem. op.); *Calkins v. James*, No. 01-10-00413-CV, 2010 WL 3928541 (Tex. App.—Houston [1st Dist.] Oct. 7, 2010, no pet.) (per curiam) (mem. op.); *In re James*, No. 01-09-00623-CV, 2009 WL 2836514 (Tex. App.—Houston [1st Dist.] Aug. 31, 2009, orig. proceeding) (per curiam) (mem. op.).

2

argued that Bresenhan sought the tax information as retribution for their exercise of protected rights of speech, association, and petitioning in previous litigation about whether to establish a guardianship for Mary Olive. The probate court denied the motion to dismiss and did not award Bresenhan, as the respondent, any attorney's fees. *See id.* § 27.009(b). Calkins, Norman, and Bresenhan all appealed.

In this interlocutory appeal under Section 51.014(a)(12) of the Civil Practice and Remedies Code,[2] Calkins and Norman contend the underlying probate proceeding must be dismissed, in its entirety, because (1) the probate judge presiding at the time was constitutionally disqualified and therefore lacked authority to act; (2) the probate proceeding was filed prematurely before Mary Olive's death; and (3) their TCPA motion should have been granted. Bresenhan challenges the probate court's failure to award him attorney's fees.

Finding no error in the probate court's ruling, we affirm.

## Background

Because the facts giving rise to the Calkins family dynamics, the pre-death application for a guardianship of Mary Olive, and, ultimately, this probate

---

[2]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that: . . . denies a motion to dismiss filed under [Civil Practice and Remedies Code] Section 27.003.").

proceeding have been detailed in earlier appellate opinions,[3] only those facts necessary for resolution of the issues currently before the Court are included here.

Though Calkins and Carolyn disagree about the specific time of their mother's death, there is no dispute that Mary Olive died at some time on July 8, 2015.[4] That day, Carolyn filed an application to probate a will executed by Mary Olive in November 2002. Calkins answered and filed a will contest, offering a competing, later-executed will and two codicils.

The probate court appointed Bresenhan as the administrator of Mary Olive's estate and, according to Bresenhan, ordered him to file income tax returns for Mary Olive individually and the estate. Bresenhan sent two emails and one letter to Norman, as Calkins's attorney, between April 2016 and November 2017, asking that she provide copies of documents to aid his preparation of the tax returns.

Norman refused to provide the documents, responding that Bresenhan's appointment as administrator was void, that he lacked authority to file a tax return on behalf of either Mary Olive individually or her estate, and that he would violate federal law by misrepresenting his authority on a tax return. Although not explicit in her correspondence, Norman's reference to Bresenhan's "void" appointment

---

[3]     *See* note 1 *supra*.

[4]     Calkins, relying on a certificate of death issued by the State of Texas, asserts that Mary Olive died at 12:30 p.m. on July 8, 2015. Carolyn asserts that she was with Mary Olive when she passed and that the time of death was at or before 11:48 a.m.

seemingly concerns Calkins's contention that the then-sitting judge, the Honorable Mike Wood, could not preside over any case involving the Calkins family because he either was disqualified or had recused in a previously filed guardianship case involving Mary Olive.[5]

Bresenhan filed a "Motion for Tax Information" requesting an order compelling Calkins "and/or his counsel to provide the necessary tax information." The appellate record does not indicate whether Calkins or Norman filed a written response. About one month later, Judge Wood granted the motion and ordered both Calkins "and his counsel" to provide Bresenhan the following:

1) any testamentary and trust documents executed by Mary Olive before her death;

2) a list of all stocks and bonds held by Mary Olive at the time of her death;

3) records of any bank accounts, notes, and cash at the time of Mary Olive's death;

4) the previous eight years of Mary Olive's tax returns;

5) the name and contact number of Mary Olive's accountant before and at the time of her death;

6) a list of any insurance on Mary Olive's life;

7) a list of any real property owned by Mary Olive at the time of her death; and

---

[5] Judge Wood has since retired and is no longer the presiding judge of the Harris County Probate Court No. 2. *Cf. In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 229 n.6 (Tex. 2008) (taking judicial notice *sua sponte* that trial judge had been replaced by election during pendency of mandamus case).

8) any other "files of matters" necessary to help Bresenhan determine the status of the estate's assets.

Calkins and Norman did not produce any documents. Instead, on the day the production was due, they jointly moved to dismiss Bresenhan's "legal action" under the TCPA. In their motion to dismiss, Calkins and Norman argued that the allegations in Bresenhan's motion for tax information were based on, related to, or in response to the various pleadings and motions filed by Norman on Calkins's behalf in the guardianship case. They asserted that by ordering Norman, individually, to comply with its production mandate, the probate court interfered with the attorney-client relationship, denied Norman the exercise of her right to associate with Calkins as a client, and denied Calkins his right to associate with Norman as his preferred counsel. They further asserted that the order prohibited Calkins's petitioning activity and speech related to his "objections to actions taken by a disqualified/recused judge."

To their motion to dismiss, Calkins and Norman attached: (1) printed docket sheets from the Harris County Clerk's website providing the case information and status for the previous guardianship case and the underlying probate proceeding; (2) Mary Olive's death certificate; (3) the Local Rules of the Harris County probate courts; (4) information related to Judge Wood's disqualification or recusal in the

guardianship case;[6] (5) the transcript for the hearing on a motion to transfer the underlying probate case; and (6) the transcript for the hearing on Bresenhan's motion for tax information, along with the motion itself and the probate court's order. In addition, Calkins and Norman each submitted an affidavit, wherein they set out the history of the Calkins family litigation and their respective roles in it.

Bresenhan responded and argued that Calkins and Norman's TCPA dismissal motion, filed more than two years after the probate began, was untimely and, as a result, frivolous or dilatory so as to trigger an award of attorney's fees to him under TCPA Section 27.009(b). *See* TEX. CIV. PRAC. & REM. CODE § 27.009(b) ("If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party."). Bresenhan requested fees in the amount of $10,880 for responding to the dismissal motion; $20,000 in the event of an unsuccessful appeal to an intermediate appellate court; and an additional $10,000 in the event of an unsuccessful petition for review in the Texas Supreme Court.

As was observed at the hearing on the TCPA motion, however, Bresenhan filed his request for attorney's fees the night before the hearing, prompting this exchange in which Bresenhan withdrew his fees request:

---

[6]    This information includes a hearing transcript and selected pleadings. Calkins and Norman did not include the administrative judge's written orders on the disqualification or recusal motions.

BRESENHAN: And we have asked for attorney's fees on the Motion to Dismiss. We filed an affidavit. The motion –

CALKINS'S COUNSEL: Your Honor, we got that in at 5:12 last night. You see that relative to a motion for sanctions, which is what that contains –

THE COURT: Yeah. I'm not going to grant . . . all those sanctions. I haven't had any evidence of it. They haven't seen it.

BRESENHAN: There are affidavits attached.

COURT: Well, you filed it last night.

BRESENHAN: Well, that's true. But there's no –

COURT: Well, three days' notice of a hearing.

BRESENHAN: All right. Fine. Then we'll just limit it to denying the motion.

COURT: Okay. If you'll hand me an order that does that.

After the hearing, the probate court issued a written order taking judicial notice of the contents of its file and denying Calkins and Norman's TCPA motion to dismiss. The order does not include an express ruling on Bresenhan's request for attorney's fees, and no other order either denies or awards the requested fees.

## Interlocutory Appellate Jurisdiction

The probate court has not rendered a final judgment in this case. "Unless a statute authorizes an interlocutory appeal, appellate courts generally only have jurisdiction over final judgments."[7] *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) (instructing courts to strictly apply interlocutory appeal statutes as "a narrow exception to the general rule that interlocutory orders are not immediately appealable"). Calkins, Norman, and Bresenhan all appealed under the statute authorizing an interlocutory appeal from an order that "denies a motion to dismiss filed under Section 27.003 [of the TCPA]." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12). Section 27.003 provides a mechanism for the dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

Although this appeal is from the probate court's order denying Calkins and Norman's TCPA dismissal motion, Calkins and Norman's first two appellate issues have nothing to do with Bresenhan's alleged attempt to suppress protected expression. Instead, Calkins and Norman complain about Judge Wood presiding

---

[7] We recognize that probate proceedings are an exception to the "one final judgment" rule; in such cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001); *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). But that exception is not implicated here because the parties have not argued that an interlocutory probate order is sufficiently final to qualify for appeal. They rely exclusively on the statute authorizing interlocutory appeals. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a).

over the proceeding and the timing of Carolyn's application for probate of Mary Olive's will. According to Calkins and Norman, these matters affect the probate court's subject-matter jurisdiction and, thus, may be raised at any time, including in this interlocutory appeal of the probate court's order denying their TCPA motion to dismiss. As discussed below, we disagree and do not reach either of Calkins and Norman's first two issues because they are outside the limited scope of our interlocutory jurisdiction.

## A.    Disqualification

In their first issue, Calkins and Norman contend that Judge Wood was constitutionally disqualified from presiding over any matter involving the Calkins family, including the underlying probate proceeding. Their contention is based on the regional presiding judge's decision—more than five years ago—to either recuse or disqualify Judge Wood from presiding in the prior guardianship case involving Mary Olive. They argue that the remedy for Judge Wood's refusal, before his retirement, to remove himself as a decisionmaker in the probate proceeding is dismissal of the entire cause.

Even ignoring that Calkins and Norman offer no legal authority for their contention that the removal of a judge in one proceeding carries over to subsequent proceedings, we cannot consider the contention in this interlocutory appeal. The appealed-from order is the order denying Calkins and Norman's TCPA motion to

10

dismiss Bresenhan's tax-information motion. The appealed-from order is not an order denying a motion to recuse or disqualify Judge Wood. Neither the statute on which this Court relies for its interlocutory appellate jurisdiction nor any other statute authorizes an interlocutory appeal from a disqualification or recusal order. *See id.* § 51.014(a)(12).

Calkins and Norman argue that the Court may nevertheless consider the issue because Judge Wood's constitutional disqualification is a jurisdictional matter that can be raised at any time. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982) (noting that disregard of "constitutional disqualification is error that can be raised at any point in the proceeding"); *Postal Mut. Indem. Co. v. Ellis*, 169 S.W.2d 482, 484 (Tex. 1943) ("It is settled that the disqualification of a judge . . . affects his very jurisdiction and power to act, and cannot be waived."). But, in making this argument, Calkins and Norman ignore (1) the meaningful distinctions between constitutional disqualification and recusal (which influence whether or not a jurisdictional issue is presented) and (2) the ambiguities in this record (which prevent us from determining the nature of the issue presented).

A judge may be removed from a case because he is constitutionally disqualified (TEX. CONST. art. V, § 11), is subject to a statutory strike (TEX. GOV'T CODE § 74.053), or is recused under the rules promulgated by the Texas Supreme Court (TEX. R. CIV. P. 18a, 18b). "The grounds and procedures for each type of

11

removal are fundamentally different," as are the appellate remedies. *See In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding); *In re Wilhite*, 298 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding).

No statute or rule expressly contemplates an interlocutory appeal of the removal of a judge. When a judge continues to sit in violation of a constitutional proscription, mandamus is available to compel his disqualification. *In re Union Pac. Res. Co.*, 969 S.W.2d at 428–29. This is so because any orders or judgments rendered by a constitutionally disqualified judge are void and without effect. *Id.* at 428. In contrast, a presiding judge's erroneous decision not to recuse himself does not void or nullify his subsequent acts. *Id.* An order or judgment rendered in such circumstances may be challenged only on appeal from a final judgment. *See* TEX. R. CIV. P. 18a(j)(1)(A) ("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment.").

Calkins and Norman have not argued that an independent ground for Judge Wood's constitutional disqualification exists in the probate proceeding, which might render Judge Wood's ability to preside a jurisdictional issue. That is, they have not argued that Judge Wood (1) served as a lawyer in the matter in controversy or previously practiced with a lawyer who served during such association as a lawyer in the matter; (2) individually or as a fiduciary, has an interest in the subject matter in controversy; or (3) is related by affinity or consanguinity within the third degree

12

to one of the parties. *See* TEX. CONST. art. V, § 11; TEX. R. CIV. P. 18b(a). Instead, they argue that his disqualification or recusal in the previous guardianship case concerning Mary Olive carries over to the probate of her estate after death.

But the record does not establish Judge Wood's previous constitutional disqualification. Our general references to Judge Wood as having been recused or disqualified in a previous matter, without clarification of the grounds or procedure applied, are intentional. That is as specific as we can be on this record. Neither the materials designated for inclusion in the appellate record nor the parties themselves make clear whether Judge Wood was, in fact, constitutionally disqualified or only recused in the guardianship proceeding. A decision of this Court, however, suggests that the administrative judge ruled only to recuse Judge Wood. *See James*, 438 S.W.3d at 707–08. Given this lack of clarity, the record does not permit us to consider Calkins and Norman's first issue as part of this interlocutory appeal.[8]

## B.    Application to probate will

Relying on the instruction in Section 256.002 of the Estates Code that "[t]he probate of a will of a living person is void," TEX. EST. CODE § 256.002, Calkins and

---

[8]    Even if Calkins and Norman are correct that Judge Wood should not have presided in the probate proceeding, this is still an interlocutory appeal from the order denying their TCPA motion to dismiss. Our remedy would be a judgment declaring the order denying the TCPA motion void, not dismissal of the entire probate proceeding. *Cf. Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) ("It has always been the rule in Texas that any *orders* or *judgments* rendered by a trial judge who is constitutionally disqualified are void and without effect.") (emphasis added).

13

Norman next urge the Court to dismiss the probate proceeding because Carolyn, who is not a party in this appeal, allegedly filed her application to probate Mary Olive's will when Mary Olive was still alive. We see no application for Section 256.002 in this limited, interlocutory appeal under the TCPA. The appealed-from order is not the probate of a will. It does not make any declaration or have any effect on the title or right to possess any property disposed of by either of Mary Olive's purported wills. The order does nothing more than reject Calkins and Norman's contention that Bresenhan sought tax information to suppress their protected speech, association, or petitioning activity.

Thus, Calkins and Norman's request for this Court to determine whether Carolyn prematurely applied to probate is outside the scope of this interlocutory appeal under the TCPA and, in addition, would impermissibly require this Court to act as a factfinder on the time of Mary Olive's death. *See Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (stating that "a court of appeals cannot make original findings of fact"); *Bellefonte v. Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex. 1986) (stating that "[f]indings of fact are the exclusive province of the jury and/or trial court" and explaining that court of appeals exceeds its authority when it acts as factfinder). We will not consider their second issue.

## TCPA

In their third issue, Calkins and Norman ask this Court to set aside the probate court's order denying their TCPA motion to dismiss and remand with instructions to dismiss the probate proceeding. Bresenhan raises cross-issues, contending that the probate court's order denying the TCPA motion should have included an award of his attorney's fees for responding to the motion and this appeal.

Before we consider whether the probate court's ruling on the TCPA motion to dismiss is erroneous, we note that Calkins and Norman have requested relief (i.e., the dismissal of the probate proceeding) we cannot grant in this appeal. Any motion challenging the probate proceeding as a "legal action" subject to dismissal under the TCPA was due 60 days after Calkins was served with the probate application in July 2015, which, as Bresenhan points out, was more than two years before Calkins and Norman sought any relief under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(b) ("A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action."); *see also Cavin v. Abbott*, 545 S.W.3d 47, 59 (Tex. App.—Austin 2017, no pet.) ("A party seeking to invoke the Act's testing and dismissal mechanisms must do so by motion soon after the 'legal action' to be challenged is filed.").

To avoid a timeliness challenge, Calkins and Norman assert that Bresenhan's motion for tax information *itself* is the "legal action." Assuming without deciding

that Bresenhan's tax-information motion is a "legal action" subject to dismissal under the TCPA,[9] the maximum relief we could grant is dismissal of that motion, not dismissal of the entire probate proceeding. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b) (stating that "a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of" certain enumerated rights).

We cannot grant even this more limited relief, however, because Calkins and Norman have not established by a preponderance of the evidence that Bresenhan's motion for tax information was "based on, relate[d] to, or . . . in response to [their] exercise of the right of free speech, right to petition, or right of association," as was their burden as TCPA movants. *Id.* §§ 27.001(2)–(4), .003(a), .005(b); *see In re*

---

9    This Court has expressed doubt as to whether the TCPA applies to proceedings other than those for adjudication of legal claims on their merits. *See Paulsen v. Yarrell*, 537 S.W.3d 224, 233 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (applying doctrine of *ejusdem generis* to interpret TCPA's definition of "legal action" and observing that list within definition "is best characterized by the observation that each element of this [enumerated] class is a procedural vehicle for the vindication of a legal claim, in a sense that is not true for a motion to dismiss"); *Caress v. Fortier*, No. 01-18-00071-CV, 2019 WL 2041325, at *2 (Tex. App.—Houston [1st Dist.] May 9, 2019, no pet. h.) (holding that "the TCPA does not apply to Rule 202 proceedings"); *see also* TEX. CIV. PRAC. & REM. CODE § 27.001(6) (defining "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief").

*Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015) (orig. proceeding). Bresenhan's attorney's fees issue also fails.

## A. Principles of law and standards of review

The TCPA is "sometimes referred to as an anti-SLAPP law—the acronym standing for strategic lawsuit against public participation." *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016). Its stated purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *Schimmel v. McGregor*, 438 S.W.3d 847, 854 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). To effectuate this purpose, the Act provides a procedure to expedite the dismissal of legal actions brought to intimidate or silence a party's exercise of First Amendment rights. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017); *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .005.

First, the party moving to dismiss must show, by a preponderance of the evidence, that the non-movant's "legal action" is "based on, relates to, or is in response to [the movant's] exercise of the right of free speech, right to petition, or right of association," as those rights are statutorily defined. TEX. CIV. PRAC. & REM. CODE §§ 27.001(2)–(4), .003(a), .005(b); *see In re Lipsky*, 460 S.W.3d at 586.

17

If the movant makes this initial showing, then the burden shifts to the non-movant to establish "'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *See Lipsky*, 460 S.W.3d at 587 (quoting TEX. CIV. PRAC. & REM. CODE § 27.005(c)). "The legislature's use of 'prima facie case' in the second step of the inquiry implies a minimal factual burden: '[a] prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true.'" *Schimmel*, 438 S.W.3d at 855 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)).

The TCPA instructs that "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). If it orders dismissal of "a legal action," the trial court shall award to the movant reasonable attorney's fees, costs, and sanctions. *Id.* § 27.009(a). Alternatively, if the court finds the motion to dismiss is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the non-movant. *Id.* § 27.009(b). We review de novo whether each party carried its assigned burden. *See Better Bus. Bureau of Metro. Hous., Inc., v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

To the extent our analysis requires statutory construction, that is a question of law we also consider de novo. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Better Bus. Bureau of Metro Hous.*, 441 S.W.3d at 353. When construing the TCPA, as with any other statute, our primary objective is to give effect to the Legislature's intent, which we seek first and foremost in the statute's text. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631–32 (Tex. 2008). The plain meaning of the text is the best expression of legislative intent, unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We must apply the statute as written. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam). We construe the Act liberally "to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE § 27.011(b); *Schimmel*, 438 S.W.3d at 854.

## B.  Calkins and Norman's motion to dismiss

As set out above, the Act imposes the initial burden on Calkins and Norman to establish by a preponderance of the evidence that Bresenhan's motion for tax information was based on, related to, or was in response to their exercise of the right of free speech (i.e., "a communication made in connection with a matter of public concern"); right of association (i.e., "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests"); or

19

right to petition (i.e., "a communication in or pertaining to . . . a judicial proceeding," among other things). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001(2)–(4); 27.005(b). When the probate court denied the motion to dismiss, it did not expressly determine whether Calkins and Norman met this burden. We consider that question de novo. *Better Bus. Bureau of Metro. Hous.*, 441 S.W.3d at 353.

On appeal, Calkins and Norman argue that Bresenhan's motion for tax information "was based on, related to, or was in response to [their] exercise of the right of association." But they do not point to any specific evidence supporting their argument; instead, they reference the 80 pages of the appellate record occupied by their motion to dismiss and its attachments and assert that, within those pages, is proof satisfying their initial burden. The referenced pages include arguments that (1) Bresenhan moved for tax information in retaliation for the "pleadings, motions and responses to motions" Calkins filed in this and other litigation, which Calkins and Norman asserted was protected petitioning activity; and (2) the mandate for Norman, individually, to produce documents interfered with the attorney-client relationship through which Calkins objected to Judge Wood presiding, which Calkins and Norman asserted was protected speech.

Assuming *arguendo* that Calkins and Norman engaged in conduct that would fall within the TCPA's definitions of the "exercise of the right of free speech," petition, or association, *see* TEX. R. APP. P. 38.1(i), we find no evidence that

Bresenhan's motion for tax information is a "legal action" predicated upon that conduct. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see also Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 197 (Tex. App.—Austin 2017, pet. dism'd) (observing that initial burden "can be met if . . . [movant's] claims are predicated factually on conduct that falls within" one of TCPA-defined categories of protected expression). The evidence submitted primarily concerns Judge Wood's decision not to recuse himself in the probate proceeding and the long history of litigation involving Mary Olive's estate that, according to Calkins and Norman, compelled Judge Wood to reach a different conclusion. Evidence regarding Judge Wood's recusal decision does not establish or support any inference of a connection between Bresenhan's motion for tax information and one of the TCPA-defined categories of protected expression.

We are mindful that the TCPA does not require Calkins and Norman to present testimony or documentary evidence to satisfy their evidentiary burden. *See Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (deciding challenged legal action related, in part, to exercise of right to petition based on consideration of pleadings as evidence). Under Section 27.006, pleadings may be considered as evidence. TEX. CIV. PRAC. & REM. CODE § 27.006(a). But Bresenhan's motion for tax information is devoid of any suggestion that it is based on, related to, or in response to protected expression as defined by the TCPA. *See id.* §§ 27.001(2)–

21

(4), .003(a). To the contrary, the motion indicates a different, permissible purpose. Bresenhan expressly stated that he filed the motion because he was court ordered to file Mary Olive's individual and estate tax returns and he needed the documents identified in his motion to comply with the order.

On this record, we conclude that Calkins and Norman have not satisfied their initial burden to show that Bresenhan's motion for tax information is subject to dismissal under the TCPA.[10] *See id.* § 27.005(b). Accordingly, we overrule their third issue.

## C.  Bresenhan's request for attorney's fees

Section 27.009(b) of the TCPA permits an award of court costs and reasonable attorney's fees to the responding party "[i]f the court finds that a motion to dismiss filed under [the Act] is frivolous or solely intended to delay." *Id.* § 27.009(b). In his two issues on appeal, Bresenhan challenges the probate court's failure to award him attorney's fees under Section 27.009(b) for responding to Calkins and Norman's motion to dismiss and defending the probate court's order on appeal. We do not

---

[10]  Without citation to any authority, Bresenhan argues that Norman is not a proper party on appeal because she is counsel for a party—not a party herself—in the proceeding below and, thus, could not join Calkin's TCPA motion to dismiss. Norman responds that she jointly moved with Calkins because both Bresenhan's motion for tax information and the probate court's order granting the motion directed her, individually, to act. We need not reach this issue given our conclusion that the probate court did not err in denying the motion.

22

decide whether Bresenhan was entitled to attorney's fees because he did not preserve the issue for appeal.

"To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling." *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 897 (Tex. App.—Texarkana 2004, pet. denied) (citing TEX. R. APP. P. 33.1(a)(1)). In addition, "an adverse ruling must be obtained from the trial court, either expressly or implicitly." *Id.* (citing TEX. R. APP. P. 33.1(a)(2)); *see also Jackson v. Jackson*, No. 01-04-01215-CV, 2006 WL 3095384, at *3 (Tex. App.—Houston [1st Dist.] Nov. 2, 2006, no pet.) (mem. op.) ("A party must obtain a ruling on a motion in order to preserve error on the issue raised by the motion."); *Kadhum v. Homecomings Fin. Network, Inc.*, No. 01-05-00705-CV, 2006 WL 1125240, at *2 n.4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, pet. denied) (mem. op.) ("In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely motion, stating the specific grounds for the ruling that it desired the court to make, and must have obtained a ruling on its motion.").

Although Bresenhan requested attorney's fees under Section 27.009(b) in his response to Calkins and Norman's TCPA motion to dismiss, the appellate record does not include a written or oral ruling on his request. *See* TEX. R. APP. P. 33.1(a)(2). The probate court's written order denying the motion to dismiss states:

23

> As requested, the Court takes judicial notice of the contents of the Court's file, and at this time, the motion to dismiss of Richard Calkins, and Susan C. Norman, under Chapter 27 of the Texas Civil Practice & Remedies Code is DENIED.

It does not include any language refusing to award Bresenhan attorney's fees. Nor does it implicitly deny Bresenhan's fees request, as the denial of a respondent's attorney's fees does not necessarily flow from the denial of a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .009(b). Quite the opposite, a finding that a motion to dismiss is not well taken must precede an award of the respondent's attorney's fees under Section 27.009(b). *See id.* § 27.009(b) (requiring finding that motion to dismiss "is frivolous or solely intended to delay" before court may award attorney's fees to respondent). Likewise, no oral ruling appears in the court reporter's transcript. During argument on Bresenhan's fee request, the probate court questioned whether Bresenhan had timely filed the request and supporting affidavit under the local rules. Rather than argue the timeliness of the request or press for the probate court for a ruling, Bresenhan responded: "All right. Fine. Then we'll just limit to denying the motion." And the probate court signed an order to that effect.

By failing to obtain a ruling from the probate court, Bresenhan has not preserved for appellate review any issue regarding his request for attorney's fees. *See* TEX. R. APP. P. 33.1(a)(2); *see also Jackson*, 2006 WL 3095384, at *3; *Kadhum*, 2006 WL 1125240, at *2 n.4. Accordingly, we overrule his issues on appeal.

## Conclusion

For the foregoing reasons, we affirm the probate court's order.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.